

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| STATE OFFICE OF RISK MANAGEMENT, | § | No. 08-14-00071-CV |
|  | § | Appeal from |
| Appellant, | § | County Court at Law No. 3 |
| v. | § | of El Paso County, Texas |
| MARIA E. OLIVAS, | § | (TC # 2012-DCV-01609) |
| Appellee. | § |  |

## **O P I N I O N**

An attorney successfully representing a worker before the Division of Worker's Compensation (DWC) may be entitled to attorney's fees, not to exceed 25% of the claimant's recovery, which is paid out of the worker's recovery.[1] If the insurance carrier appeals the DWC's determination to a trial court, and loses, the claimant's attorney might be entitled to an attorney's fees award to be paid by the insurance carrier (and not out of the worker's recovery).[2] The State's Office of Risk Management (SORM), which handles state employee worker's compensation claims, contends that under the relevant statutory language, and its immunity, that if it appeals and loses, the worker's attorney is entitled to no attorney's fees at all, whether paid

---

[1] TEX.LAB.CODE ANN. § 408.221(b)(West 2015).

[2] TEX.LAB.CODE ANN. § 408.221(c).

directly by it, or out of the worker's recovery. And assuming we do not subscribe to that construction of the statute, SORM alternatively concludes that the manner in which the attorney's fees were calculated here was error. We begin with a brief factual history of the case.

## FACTUAL SUMMARY

Maria Olivas prevailed at the DWC in a work injury claim involving the total and permanent loss of both hands.[3] Olivas pursued the claim against SORM which is a statutory agency of the State of Texas authorized to administer state employee worker's compensation claims. TEX.LAB.CODE ANN. § 412.011 (West 2015). The matter had been pending for some time. Olivas hired her attorney in July 2008. During the course of the proceedings, there were twelve benefit review conferences and six contested case hearings, resulting in six appeals to the DWC's Appeals Panel, and two suits for judicial review.

This particular case arose out of a final DWC determination on December 27, 2011 which SORM appealed to the trial court. A jury was empaneled almost two years later and found against SORM, determining that Olivas was entitled to lifetime income benefits for the total and permanent loss of both of her hands.

A final judgment awarding Olivas lifetime income benefits was signed on January 22, 2014. That judgment has not been challenged on appeal. Before us is a separate order of the trial court, signed within thirty days of the final judgment, awarding an attorney's fee of $139,338 to be paid out of Olivas' lifetime income benefits.[4]

---

[3] The Texas Workers' Compensation Commission was formerly charged with administration of the Texas Workers' Compensation Act. The Legislature abolished the Commission on September 1, 2005, and transferred its responsibilities to the Texas Department of Insurance, Division of Workers' Compensation. Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 8.001(b), 8.004(a), 2005 TEX.GEN.LAWS 469, 607-08. *See Fireman's Fund Ins. Co. v. Weeks,* 259 S.W.3d 335, 338 n.2 (Tex.App.--El Paso 2008, pet. denied). The abbreviation "DWC" is used in this opinion to refer to both the former Commission and the Division of Workers' Compensation.

[4] Olivas contends in a cross point that we do not have jurisdiction to consider an appeal of this order, citing *Wagner v. Warnasch*, 156 Tex. 334, 339, 295 S.W.2d 890, 893 (1956) and *Kennedy v. Hudnall*, 249 S.W.3d 520, 523

Olivas' counsel filed an attorney's fee application after the trial of the case. The application was supported in part by the attorney's affidavit which swore that the facts stated in the application itself were correct, and further averred that he had a 25% contingency fee agreement with Olivas. The application recited the number of prior administrative proceedings before the DWC. With respect to this litigation, Olivas' attorney referenced attending two depositions, and performing all the functions usually attendant to litigating a case (interviewing witnesses, filing pleadings, reviewing medical records along with other documentary evidence, and obtaining records in admissible form). The trial itself took three days. But neither the application nor the affidavit provided the total number of hours expended, the amount of time for each of the tasks performed, or a billing rate for the attorney or his staff. The application claimed that a 25% contingency is customary in the local market for this type of case. The application further contended the claim for lifetime benefits involved unique and novel questions of law, and the amount at issue was substantial.

The affidavit then set out the benefits obtained for Olivas. Pursuant to the jury's finding, Olivas would be paid benefits of $755.36 per week for life. Her life expectancy was estimated at 27.18 years as per a Center for Disease Control's Mortality Table. Multiplying the weekly benefits times her life expectancy yielded a gross total of future payments of $1,067,323.68. The application then referenced a Texas Department of Insurance "Discount Rate," which when applied, calculated the present value of the future payments at $684,552.60. Applying the 25% contingency to that present value figure yielded a total of $171,138 in attorney's fees. The

(Tex.App.--Texarkana 2008, no pet.). These cases, however, deal with the attempted appeal of a trial court's order to enforce a final judgment after its plenary power expired. The trial court's order on attorney's fees in this case was issued within the period of its plenary power and is not an order enforcing the final judgment, but is a part of the final judgment itself.

affidavit then stated that $31,800 had previously been paid for the prior proceedings before the DWC. After deducting the previous payments, the net remaining fee was $139,338.

Olivas also signed an affidavit acknowledging that she agreed to a 25% contingency fee. She further swore: "I understand that the State Office of Risk Management will reduce my weekly benefits by 25% until such time as it has recouped the commuted fee of $139,338.00 in full. This fee is a reasonable and necessary attorney's fee in this matter and I request that the sum of $139,338.00 be approved and paid to the Law Office of Charles L. Scruggs, P.C." In other words, and important to this case, the attorney's fee was to be paid out of Olivas' benefits and she agreed to the amount of the fee.

SORM opposed the fee application for the reasons discussed below. After a non-evidentiary hearing, the trial court ordered the attorney's fee commuted to $139,338 and paid immediately to the attorney, but gave SORM the right to reduce all future payments to Olivas by 25% until the total amount of the commuted fee was recouped. The order states that the trial court considered seven factors that are set forth in TEX.LAB.CODE ANN. § 408.221(d) in awarding the fees. The order concluded that the 25% contingency was reasonable and necessary. SORM challenges the order on a number of grounds, each of which requires us to construe various provisions of the Texas Worker's Compensation Act. We begin with our framework for statutory construction.

**STANDARD OF REVIEW**

Statutory construction is a legal question that we review *de novo*. *In re ReadyOne Industries, Inc.*, 394 S.W.3d 680, 684 (Tex.App.--El Paso 2012, orig. proceeding), *citing Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Our primary focus in statutory interpretation is to give effect to legislative intent, considering the language of the statute, as well

as its legislative history, the objective sought, and the consequences that would flow from alternative constructions. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We consider the words in context, and not in isolation. *In re Office of the Attorney General*, 456 S.W.3d 153, 155 (Tex. 2015)("Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases."); *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We must "presume that every word in a statute has been used for a purpose and that every word excluded was excluded for a purpose." *Emeritus Corporation v. Blanco*, 355 S.W.3d 270, 276 (Tex.App.--El Paso 2011, pet. denied); *Cornyn v. Universe Life Ins. Co.*, 988 S.W.2d 376, 379 (Tex.App.--Austin 1999, pet. denied).

These general rules apply unless enforcing the plain language of the statute as written would produce absurd results. *Entergy*, 282 S.W.3d at 437; s*ee C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 322 n.5 (Tex. 1994)("Statutory provisions will not be so construed or interpreted as to lead to absurd conclusions, great public inconvenience, or unjust discrimination, if the provision is subject to another, more reasonable construction or interpretation."); *University of Tex. S.W. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004). Stated another way, we are required to presume that the Legislature has acted reasonably.

The Code Construction Act provides a set of guidelines for construing legislative enactments. TEX.GOV'T CODE ANN. § 311.001 *et. seq.* (West 2013). Included is the directive that "whether or not the statute is considered ambiguous on its face" a court may consider: the "object sought to be attained"; the "circumstances under which the statute was enacted"; the "legislative history"; "common law or former statutory provisions"; "consequences of a

particular construction"; and "administrative construction of the statute." TEX.GOV'T CODE ANN. § 311.023(1)(2)(3)(4)(5)(6). The Legislature also directs that its enactments intend "a just and reasonable result." TEX.GOV'T CODE ANN. § 311.021(2) & (3)(West 2013).

## DOES THE INTERACTION OF SOVEREIGN IMMUNITY AND SECTION 408.221 BAR THE ATTORNEY'S FEE AWARD?

In its first two issues, SORM argues that it cannot be liable for attorney's fees given the text of Section 408.211 of the Act and sovereign immunity law in Texas. Specifically, it argues that Section 408.221 contains two alternative and mutually exclusive avenues for recovery of attorney's fees. Subsection (b) allows attorney's fees to be recovered out of the worker's recovery, and that fee is set and administered by the DWC or a court. But if an insurance carrier appeals an adverse determination to the trial court, attorney's fees are dictated by subsection (c) which provides that the attorney's fees are paid directly by the insurance carrier, and not out of the worker's recovery. SORM is considered an insurance carrier for the purposes of subsection (c), but SORM is also entitled to assert sovereign immunity. Accordingly, SORM contends here that if there is any entitlement to attorney's fees, it must be based on Section subsection (c), but that avenue is barred by sovereign immunity. In a somewhat broader point, SORM argues in Issue Two that sovereign immunity bars any award of attorney's fees under Section "408.221" which we understand to mean it can never be required to pay attorney's fees.

The first underpinning of SORM's argument is that attorney's fees can be awarded under subsections (b) or (c), but not both. According to SORM, these provisions are mutually exclusive and only subsection (c) applies when the insurance carrier appeals an adverse determination from the DWC. We begin with the relevant text of the statute:

> (a) An attorney's fee, including a contingency fee, for representing a claimant before the division or court under this subtitle must be approved by the commissioner or court.

(b)  Except as otherwise provided, an attorney's fee under this section is based on the attorney's time and expenses according to written evidence presented to the division or court.  Except as provided by Subsection (c) . . . the attorney's fee shall be paid from the claimant's recovery.

(c)  An insurance carrier that seeks judicial review under Subchapter G, Chapter 410, of a final decision of the appeals panel regarding compensability or eligibility for, or the amount of, income or death benefits is liable for reasonable and necessary attorney's fees as provided by Subsection (d) incurred by the claimant as a result of the insurance carrier's appeal if the claimant prevails on an issue on which judicial review is sought by the insurance carrier . . . .  An award of attorney's fees under this subsection is not subject to commissioner rules adopted under Subsection (f).

(d)  In approving an attorney's fee under this section, the commissioner or court shall consider:

> (1)  the time and labor required;

> (2)  the novelty and difficulty of the questions involved;

> (3)  the skill required to perform the legal services properly;

> (4)  the fee customarily charged in the locality for similar legal services;

> (5)  the amount involved in the controversy;

> (6)  the benefits to the claimant that the attorney is responsible for securing; and

> (7) the experience and ability of the attorney performing the services.

.    .    .

TEX.LAB.CODE ANN.§ 408.221.

The fallacy in SORM's argument is its initial premise that subsections (b) and (c) are mutually exclusive such that when a claim is appealed by the carrier, attorney's fees can *only* be awarded by virtue of subsection (c).  Nothing in the text of either subsection compels that result.  Subsection (c) only says that if the carrier appeals, the carrier "is liable for reasonable and necessary attorney's fees" if the claimant prevails.  *Id*.  But simply because the carrier might be

directly liable for attorney's fee does not mean that the injured worker might not alternatively be liable to the attorney based on her contract with the attorney. To be sure, the attorney would seek to recoup attorney's fees from the insurance carrier and not his client if he is able. But failing that, the attorney is not required to work for free. Subsection (b) always provides an alternative to recover the fee out of the worker's income or death benefits.

SORM contends that the exception language in subsection (b) requires that only subsection (c) can apply in a carrier appealed case ("Except as provided by Subsection (c) . . . the attorney's fee shall be paid from the claimant's recovery."). It cites no cases for this proposition, other than listing a number of cases where worker's filed counterclaims seeking payment of attorney's fees under subsection (c). But we would expect no less from a diligent attorney who would seek payment of the fee from the carrier, and not his client, if fee shifting were available. Legislators often use exception and proviso language to harmonize seemingly inconsistent provisions. 1A Norman J. Singer, Shambie Singer, Sutherland Statutes and Statutory Construction § 21:11 (2014). The modern view is that these exceptions and provisos should be interpreted in light of the enactment's overall purpose, something also commanded by the Code Construction Act. 2A Norman J. Singer, Shambie Singer, Sutherland Statutes and Statutory Construction § 47:11 (2014); TEX.GOV'T CODE ANN § 311.023. The purpose of subsection (c) is to allow the worker's attorney to recover a fee for litigating the case, rather than sacrifice any fee if the insurance carrier happens to be an arm of the State of Texas.

SORM's construction also leads to an odd, if not absurd result. A worker's attorney who prevails at the DWC is generally entitled to a fee as approved by the DWC. TEX.LAB.CODE ANN. § 408.221(b). If the carrier appeals and loses, subsection (c) applies and the worker's attorney is again eligible for a fee, and one that is not constrained by the 25% cap which

ordinarily applies to worker's compensation fee contracts. *Id*. But under SORM's construction of the statute, if the appealing carrier happens to be SORM, or some other public entity, the attorney is not entitled to any fee for the work done at the trial court. That would create an incentive for attorney's representing public employees to limit the scope of their representation to only matters before the DWC. Otherwise, the attorney might be faced with years of litigation with no prospect of being paid. The other paradox of SORM's suggested construction is that if the worker loses at the Commission, but prevails at the trial court, the attorney can ask the trial court to approve an attorney's fee under subsection (b). But if the insurance carrier is SORM, and it appeals and then loses, the attorney cannot seek approval of a fee under subsection (b). Instead, that attorney must proceed under subsection (c) which is an avenue blocked by sovereign immunity.

Section 408.221(c) was added in the 2001 revisions to the Act. Act of May 18, 2001, 77th Leg., R.S., ch. 1456, § 8.01, 2001 TEX.GEN.LAWS 5167, 5189, *codified as amended,* TEX.LAB.CODE ANN. § 408.221(c). Nothing in the legislative history suggests its addition was meant as the exclusive avenue for attorney's fees in a carrier appealed case. House Comm. on Business & Industry, Tex. H.B. 2600, 77th Leg. R.S. (2001)(stating only that revision requires "insurer who seeks judicial review of a final decision by a TWCC appeals panel . . . is liable for reasonable and necessary attorney's fees incurred by the claimant as a result of the insurer's appeal if the claimant prevails."). We note that a parallel provision for attorney's fees related to supplemental income benefits (SIBs), amended at the same time, undercuts SORM's argument. Act of May 18, 2001, 77th Leg., R.S., ch. 1456, § 8.02, 2001 TEX.GEN.LAWS 5167, 5190, *codified as amended,* TEX.LAB.CODE ANN. § 408.147(c). Section 408.147(c) allows the worker to recover their attorney's fees from the insurance carrier when the carrier appeals a SIBs

determination and then loses. *Id*. That section specifically provides that "[a]ttorney's fees awarded under this subsection are not subject to Sections 408.221(b), (f), and (i)." The Legislature knew how to make attorney's fee provisions mutually exclusive, and chose not to make a similar statement in Section 408.221(c).

At the hearing below, SORM suggested that the worker's attorney could try and collect the fee directly from the worker as she were paid (i.e. on a weekly basis). Aside from the practical and administrative problems this presents to the worker's attorney, the Labor Code contemplates that certain liens, such as attorney's fees and child support liens, should be honored by the insurance carrier when paying out income and death benefit claims. TEX.LAB.CODE ANN. § 408.203(a)(1)(2)(3)("An income or death benefit is subject only to the following lien or claim, to the extent the benefit is unpaid on the date the insurance carrier receives written notice of the lien or claim, in the following order of priority: (1) an attorney's fee for representing an employee or legal beneficiary in a matter arising under this subtitle; (2) court-ordered child support; or (3) a subrogation interest established under this subtitle."). We are required to apply a construction that gives effect to all of a statute's provisions. *Emeritus*, 355 S.W.3d at 276. Requiring the attorney to go directly to his client would invalidate this lien provision of the Act.[5]

Instead, the more reasonable construction of these two provisions is that once the insurance carrier files suit, and loses, the worker's attorney can proceed directly against the carrier under subsection (c) if possible. But if the insurance carrier happens to be one that enjoys sovereign or governmental immunity, then the attorney can ask the trial court to approve a fee to be taxed out of the worker's benefits. This result gives the attorney an incentive to remain in the

---

[5] Similarly, we doubt the Attorney General, seeking to collect child support payments, would be satisfied with collecting the sums directly from the worker when he or she received their check, rather than have the insurance carrier pay the sum directly out of the worker's weekly benefits.

case, it retains the sanctity of the attorney's fee contract with the client, and also protects the sovereign's interest in avoiding attorney's fee liability.

In Issue Two, SORM maintains that sovereign immunity protects it from attorney's fee under "408.221", which suggests that SORM believes it can never be liable for any attorney's fees. In its reply brief, SORM states only that it is protected from attorney's fees under Section "408.221(c)." If SORM contends that it can never be required to pay any sum denominated as an attorney's fee, even if it is only a payment to an attorney taken out of a worker's benefit check, we would disagree.

We take it as a given that SORM is protected by sovereign immunity from attorney's fees under subsection 408.221(c). Those fees are above and beyond the worker's benefits. In *Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528 (Tex. 2012), the court held that a school district was protected by governmental immunity from an award of attorney's fees following the unsuccessful appeal of a worker's claim. *Id*. at 529. The worker had filed a counterclaim seeking attorney's fees under subsection (c). *Id*. That holding was extended in *University of Texas System v. Ochoa*, 413 S.W.3d 769, 773 (Tex.App.--Austin 2012, pet. denied), to sovereign immunity claimed by a university.[6] The Austin court of appeals held the trial court should have granted a plea to the jurisdiction for a worker's counterclaim affirmatively seeking attorney's fees under subsection(c). *Id*. And this court held in *State Office of Risk Mgmt. v. Davis*, 315 S.W.3d 152, 154 (Tex.App.--El Paso 2010, pet. denied) that attorney's fees were unavailable to a

---

[6] The Texas Worker's Compensation Act sets out the detailed administrative scheme for resolving an injured worker's claim. Certain governmental entities then fall under the terms of the Act by virtue of the Political Subdivisions Law, codified at TEX.LAB.CODE ANN. §§ 501.001 *et. seq*., 502.001 *et. seq.*, 503.001 *et. seq.*, 504.001 *et. seq.* and 505.001 *et. seq.* Section 501.001 *et. seq.* deals with state employees, including those in the Texas Tech University System. Section 502.001 *et. seq.* governs workers in the Texas A&M System. Section 503.001 *et. seq.* governs workers in the University of Texas system, while Section 504.001 *et. seq.* makes portions of the Workers' Compensation Act applicable to certain political subdivisions, including school districts. Section 505.001 *et. seq.* applies to Department of Transportation employees. Each of these sections has a specific provision that adopts certain specified sections of the Texas Worker's Compensation Act to their respective set of public employees. S*ee* §§ 501.002; 502.002; 503.002; 504.002 and 505.002.

state worker in an appeal of a supplemental benefit dispute by SORM because the Texas Tort Claims Act does not expressly provide for the recovery of attorney's fees.

But an attorney's fee award under subsection (b) is nothing more than a deduction from the worker's benefits, issued in a separate draft and made payable to an attorney. As the Texas Supreme Court noted in *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 229 (Tex. 2010): "[t]he insurance carrier can only be said to pay these fees in the technical sense that it drafts a separate check for the attorney's fees, payable directly to the claimant's attorney." SORM could not contend that it is immune under subsection (b) unless it also contends that it is not liable to any state worker for worker compensation benefits because of its sovereign status. That position would be contrary to text of Section 501.021 which provides that state employees who suffer a compensable injury are "entitled to compensation by the director as provided by this chapter." TEX.LAB.CODE ANN. § 501.021. Section 501.002 in turn incorporates those provisions outlining the scope, extent, and limitations on death, income, and medical benefits. *Id*. By providing these benefits, the State then enjoys all the privileges and immunities of a subscriber under the Act. TEX.CIV.PRAC.&REM.CODE § 101.028 (West 2011)("A governmental unit that has workers' compensation insurance or that accepts the workers' compensation laws of this state is entitled to the privileges and immunities granted by the worker's compensation laws of this state to private individuals and corporations.")

Because the attorney's fee award here was only paid out of the worker's recovery, and sovereign immunity does not shield the State from the payment of the worker's benefits, we overrule Issues One and Two.

**DID THE TRIAL COURT PROPERLY CALCULATE THE AMOUNT AND MANNER OF PAYMENT?**

In its third issue, SORM attacks the legal and factual sufficiency of the evidence to support the amount of the attorney's fee awarded. The resolution of this issue requires that we construe the interactions of Sections 408.221(a), 408.221(b), and 408.221(d).

Subsection (b) provides that "[e]xcept as otherwise provided, an attorney's fee under this section is based on the attorney's time and expenses according to written evidence presented to the division or court." *Id*. SORM contends that the attorney's fee was only supported by a contingency fee contract, and not the attorney's time and expenses. Olivas in part responds that the language "except as otherwise provided" is meant to incorporate contingency fee agreements referenced in Section 408.221(a). That Section states: "[a]n attorney's fee, *including a contingency fee*, for representing a claimant before the division or court under this subtitle must be approved by the commissioner or court." [Emphasis added]. *Id*. From this Section, Olivas reasons that a contingency fee agreement can support an attorney's fee award.

Generally, a contingency fee agreement is a factor for a court to consider in making a fee award, but it cannot be the only factor. In *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997), the Texas Supreme Court held a party's contingent fee agreement should be considered by the factfinder in determining the reasonableness of attorney's fees, but it could not be the only evidence to support the award. *Id*. at 818. *Arthur Anderson* was decided under the Deceptive Trade Practices Act, but its holding has been extended to other contexts. *City of Dallas v. Caperton*, No. 05-01-01736-CV, 2002 WL 31424524, at *1 (Tex.App.--Dallas Oct. 30, 2002, no pet.)(not designated for publication)(subrogation recovery under Worker's Compensation Act); *AU Pharmaceutical, Inc. v. Boston*, 986 S.W.2d 331, 339 (Tex.App.-- Texarkana 1999, no pet.)(breach of settlement agreement); *Lubbock County v. Strube*, 953 S.W.2d 847, 857-58 (Tex.App.--Austin 1997, pet. denied)(Texas Whistleblower Act).

The text of Section 408.221 would not alter this principle. Subsection (a) only provides that any contingency fee agreement must be approved by the DWC or a court, but it does not state the circumstances under which a contingency agreement would itself support a fee award. The DWC through its rules sets out how attorney's fee applications are evaluated, and those rules make no allowance for approving a fee based only on a contingency agreement. The DWC rules on attorney's fees are found at 28 TEX.ADMIN.CODE § 152.1 *et. seq*. (1994)(Tex. Dep't Ins. Attorney's Fees: General Provisions). Rule 152.1 governs attorney's fees generally and restates that fee applications "shall also be based on the attorney's time and expenses . . . ." *Id*. at § 152.1(c). Rule 152.2 specifically deals with attorney's fees for the injured worker's attorney and provides that the "total amount that the commission approves for the attorney's time and expenses constitute the fee, and shall not exceed 25% of the claimant's recovery . . . ." 28 TEX.ADMIN.CODE § 152.2 (1991). Rule 152.4 sets out guidelines for lawyers serving either the worker or insurance carrier. 28 TEX.ADMIN.CODE § 152.4 (1994). That rule contains a chart setting forth the specific time increments which can be billed for certain activities and a maximum hourly rate. *Id*. Finally, 28 TEX.ADMIN.CODE § 152.3(a)(1994) requires fee applications be submitted on a specific form, "with time, hourly rate, and expenses itemized separately for the attorney and for any legal assistant." *Id*.

We find nothing in the DWC rules suggesting that a contingency fee agreement by itself would support a fee award. Nor do we find any published contested case opinions from the DWC Appeals Panel sanctioning a fee award based only on a contingent fee contract. We can look to an agency determination in construing a statute. TEX.GOV'T CODE ANN. § 311.023(6); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011)("We have long held that an agency's interpretation of a statute it is charged with

enforcing is entitled to 'serious consideration,' so long as the construction is reasonable and does not conflict with the statute's language."). Given the DWC would not apparently award an attorney's fee based only on a contingent fee agreement, we find no reason why a court should do so either.

Olivas alternatively claims that there was evidence before the trial judge on each of the seven factors found in Section 408.221(d) supporting the award. Those factors, apparently derived in part from *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997) include the (1) the "time and labor required," (2) the "novelty and difficulty" of the questions involved; (3) the "skill required to perform the legal service properly;" (4) the "fee customarily charged in the locality for similar legal services;" (5) the "amount involved" in the case; (6) the benefits to the worker that the attorney obtained; and (7) the attorney's "experience and ability." TEX.LAB.CODE ANN. § 408.221(d).

Olivas put on some evidence of these factors before the trial court by discussing them in her fee application, and having the attorney swear in his affidavit that the application was true and correct. The application discusses, albeit briefly at times, each of the seven factors. One omission from the application is any estimate of the actual time expended by counsel. The application discusses the kinds of activities the attorney performed, such as taking depositions or interviewing witnesses, but other than stating that the trial took three days, there is no quantitative estimate of the time any particular task took, or when it was performed.

Generally, when an attorney attempts to substantiate a fee on the lodestar formula (hours multiplied by the rate), the omission of specific date and time entries describing specific activities will be fatal. *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014)(lack of specificity in attorney's fee claim in breach of agreement case); *City of Laredo v. Montano*, 414 S.W.3d 731,

736 (Tex. 2013)(same, condemnation claim); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012)(same, claim under Human Rights Act). These cases, however, were all decided in the context of a litigant attempting to make their opponent pay their attorney's fee. In *Olivas*, the court observed that hours not properly billed to one's client are also not properly billed to one's adversary under a fee-shifting statute. *Id.* at 762, *quoting Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The context of this case is quite different. Here, the trial court was approving an attorney's fee ultimately to be paid by the injured worker to her own counsel. *Cf. Arthur Anderson*, 945 S.W.2d at 818 (stating that while a contingent fee may be "a reasonable fee from the standpoint of the parties to the contract" more would be required to make the fee reasonable for purposes of shifting the fee to the other side). The trial court's role here was to protect the worker from any potential overreaching by her own attorney. *Fidelity Union Cas. Co. v. Dapperman*, 53 S.W.2d 845, 847 (Tex.Civ.App.--Amarillo 1932, writ ref'd) (approval of attorney's fee part of Act's purpose to "protect the helpless and unwary from unconscionable contracts"). SORM is a stranger to this dispute, other than it was required to disburse the attorney's fee from sums it was already responsible for paying. In the unique context of this dispute, we do not find that the trial court erred in approving the attorney's fee amount based on the evidence before it.

The amount of attorney's fees generally rests within the sound discretion of the court. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). To determine whether the award constituted an abuse of discretion, the reviewing court must decide whether the trial court had sufficient evidence before it to exercise that discretion. *See Alford v. Johnston*, 224 S.W.3d 291, 298 (Tex.App.--El Paso 2005, pet. denied). We find that the trial

court had sufficient evidence before it to assess the fairness of this attorney's fee from Olivas' standpoint.

As to the fee itself, the trial court had some evidence of each of the seven factors set out in Section 408.221(d). While the trial court did not have the gross number of hours expended, it undoubtedly had knowledge of the length of trial, and the multiple proceedings reflected in the docket sheet. The trial court had some evidence of the attorney's skill and experience, the issues in the case, the result obtained and the benefit to Olivas. The trial court also has had Olivas' own affidavit which attested to and approved the amount of the fee to be taken out of her income benefits.

SORM acknowledges that the sworn fee application addressed the seven Section 408.221(d) factors, but contends the statements were conclusory. The statements in the fee application here are no more conclusory than similar affidavits permitted by the Texas Supreme Court. *See Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010)(holding attorney's testimony not objectionable as merely conclusory when the opposing party has some knowledge of the time and effort involved); *Tex. Commerce Bank, National Association v. New,* 3 S.W.3d 515, 517-18 (Tex. 1999)(affidavit was legally sufficient to support the trial court's attorney's fees award where attorney testified he was duly licensed attorney, he was familiar with usual and customary attorneys' fees in locality, and, based on his knowledge of services rendered, fee in dispute was reasonable).

Additionally, the trial court had sufficient evidence to discount and commute the amount of the fee. Olivas referenced a publically available life expectancy table to estimate the total amount of benefits. The trial court could have taken judicial notice of that kind of publicly available information. *Aetna Casualty & Surety Co. v. Brooks*, No. 05-91-01290-CV, 1992 WL

172384, at *2 (Tex.App.--Dallas 1992, no writ)(not designated for publication)(life table could be judicially noted by trial court in worker's compensation claim under TEX.R.EVID. 201); *Voronin v. Voronin*, 662 S.W.2d 102, 107 (Tex.App.--Austin 1983, writ dism'd)(judicial notice of life table in divorce proceeding); *McKibben v. McKibben*, 567 S.W.2d 538, 539 (Tex.App.--San Antonio 1978, no writ)(same); TEX.R.EVID. 201(c)("The court may take judicial notice on its own."). SORM suggests that the table may not take into account Olivas' "multiple health problems, race, ethnicity or gender." That kind of challenge, however, goes to the weight accorded the mortality chart, and not whether it can be considered at all. *Harwell & Harwell, Inc. v. Rodriguez*, 487 S.W.2d 388, 400 (Tex.Civ.App.--San Antonio 1972, writ ref'd n.r.e.) (collecting cases). Nothing in the record before us suggests a different life expectancy table would apply, or more accurately predict the length of future payments. Nor does SORM contest the discount factor applied by the trial court. The discounting methodology has long been employed by trial courts and no argument is advanced that it was inaccurately applied in this case. See *Tex. Employers' Ins. Ass'n v. Smith*, 700 S.W.2d 746, 747 (Tex.App.--Beaumont 1985, no writ)(collecting cases). Accordingly, we overrule Issue Three.

## MUST A JURY DECIDE THE AMOUNT OF THE AWARD?

In a somewhat related Issue, SORM contends in Issue Four that only a jury could decide the amount of the attorney's fee, and, because Olivas did not request a jury issue on that question, any claim for attorney's fees is waived. The Texas Supreme Court in *Crump* held that an insurance carrier which is asked to pay the worker's attorney fees out of its own funds, has a right to a have a jury determine the amount of fees. *Crump*, 330 S.W.3d at 227 ("We hold that when a question of fact exists on the reasonableness and necessity of a claimant's attorney's fees under § 408.221(c), the carrier has a right to submit that question to a jury."). But these

attorney's fees were not awarded under Section 408.221(c). Rather, they were to be paid out of the worker's recovery. It would be improper for a Section 408.221(b) attorney's fee to be determined by a jury. *Crump* itself notes that only the court should approve the amount of attorney's fees which are deducted from the worker's recovery. 330 S.W.3d at 229-30, *quoting Tex. Employers Ins. Ass'n v. Hatton,* 152 Tex. 199, 255 S.W.2d 848, 849 (1953)("The amount of attorney's fees to be allowed in a compensation case is exclusively for the court and not the jury, . . . ."). We overrule Issue Four.

## CAN THE AMOUNT OF ATTORNEY'S FEES BE COMMUTED?

Finally, in Issue Five, SORM challenges the trial court's decision to commute the attorney's fees which required SORM to make an immediate payment of the accelerated, but discounted attorney's fee amount. SORM's argument is based on construction of the Act. Neither by settlement, nor court judgment, can future benefits be paid in a lump sum. TEX.LAB.CODE ANN. § 410.257(b), TEX.LAB.CODE ANN. § 408.005(a)(West 2015).[7] From this, SORM reasons that if the attorney's fees are really being paid out of the worker's recovery, the attorney's fee must also be paid over time. The only case cited by SORM in support of this claim does not support its contention. In *Fidelity & Cas. Co. of New York v. Rust*, No. 05-97-01509-CV, 2001 WL 51066 (Tex.App.--Dallas Jan. 23, 2001, pet. denied)(not designated for publication), the insurance carrier challenged a commuted attorney's fee award that it was ordered to pay. *Id*. at *2. The court held that it was error to award attorney's fees against the insurance carrier because it was the worker, and not the insurance carrier, who appealed from the DWC. *Id*. at *2. But the court expressly overruled the carrier's claim that "the trial court did not have the authority to order attorney's fees be paid in a lump sum." *Id*. at *3.

---

[7] One exception allows lump sum payment of impairment benefits, but only when the worker has returned to work for at least three months and is making 80% of their average weekly wage. *Id*. at § 408.128.

Under the prior worker's compensation law, commuting attorney's fee became accepted after the Texas Supreme Court's decision in *Tex. Employers Ins. Ass'n v. Motley,* 491 S.W.2d 395 (Tex. 1973). *Motley* held that a trial court had the discretion to commute an award, noting that the structure of the prior law restricted commutation at the administrative level, but not once the case was appealed to a court. *Id*. at 396. *Motley* noted that the amount of the future payments to the worker would be fixed in the judgment, so there was no question as the total amount of the worker's award from which the attorney's share could be calculated. *Id.* Later courts extended *Motley* to claims where the future stream of payments was not necessarily fixed, such as payments to a widow which would terminate upon her remarriage. *See Liberty Mutual Insurance Company v. Ramos*, 543 S.W.2d 392 (Tex.Civ.App.--El Paso 1976, writ ref'd n. r. e.); *Texas Employers' Insurance Association v. Flores*, 564 S.W.2d 831 (Tex.Civ.App.--Ft. Worth 1978, writ ref'd n.r.e.).

The present Act expressly allows for the commutation of attorney's fees in all but death benefit cases. TEX.LAB.CODE ANN. § 408.221(e)("The commissioner by rule or the court may provide for the commutation of an attorney's fee, except that the attorney's fee shall be paid in periodic payments in a claim involving death benefits if the only dispute is as to the proper beneficiary or beneficiaries."). The DWC rules also allow for commutation of fees, but provide no further guidance on when commutation should or should not be allowed.[8]

We reject SORM's argument that the text of the Act disallows commutation. First, Section 408.221(e) specifically allows for commutation in all but uncontested death benefit

---

[8]  28 TEX.ADMIN.CODE 152.1(d)(1994)("An attorney's fee for representing a claimant may upon request by the attorney or carrier and approval by the commission be commuted to a lump sum only out of a sum certain award or order to pay benefits. This commuted fee may be discounted for present payment at the rate provided under the Act, § 401.023, and shall not exceed 25% of the unpaid sum certain. A commuted fee shall be recouped by the carrier out of the future income benefits paid to the represented claimant, not to exceed more than 25% out of any single payment. The fee for representing a claimant for death benefits cannot be commuted where the only dispute involves identification of the proper beneficiaries.")

cases. The Legislature is presumed to know the existing law when it enacts a statute. TEX.GOV'T CODE ANN. § 311.023(4). Commutation of attorney's fee awards was accepted prior to the adoption of the new Act. If the Legislature had wanted to disallow commutation of attorney's fees, it could have done so, but instead it specifically permitted them. We overrule Issue Five[9] and affirm the judgment below.

May 27, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

---

[9] We note that SORM's only challenge to commutation is based on its view that the text of the Worker's Compensation Act prevents commutation for lifetime income benefits. It does not raise a claim that the sovereign should be protected from advancing attorney's fees, thereby exposing the State's budget to the uncertainties of life expectancy tables or interest rate risks.