

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEXAS MUTUAL INSURANCE COMPANY, | § | |
| | § | No. 08-18-00147-CV |
| Appellant, | § | Appeal from |
| v. | § | 143rd District Court |
| | § | of Ward County, Texas |
| ANITA DEJAYNES, INDIVIDUALLY AND AS NEXT FRIEND OF ALYSSA DEJAYNES, | § | (TC# 15-12-23771-CVW) |
| NOAH MATTHEW DEJAYNES, AND EMMA MICHELLE | § | |
| DEJAYNES, MINOR CHILDREN, | § | |
| | § | |
| Appellee. | § | |

**O P I N I O N**

In a worker's compensation case, a worker's attorney who successfully appeals an adverse determination of the Division of Worker's Compensation (DWC)--subject to approval by the court--is entitled to attorney's fees.[1]  The fees, however, cannot exceed 25 percent of the claimant's recovery.[2]  They are also paid out of that recovery.[3]  In this case, the DeJayneses' attorney

---

[1] TEX.LAB CODE ANN. § 408.221(a),(b).

[2] TEX.LAB CODE ANN. § 408.221(i).

[3] TEX.LAB CODE ANN. § 408.221(b).

successfully overturned a DWC decision, and as a result, obtained for a widow and the children of a deceased worker past benefits, and a stream of future weekly benefits. The attorney asked for a fee equal to 25 percent of unpaid past benefits, and 25 percent of future benefits calculated on the basis of the widow's anticipated life expectancy. The attorney also presented some evidence of his fee based on the time actually spent and an hourly rate, which somewhat approximates the 25 percent contingency fee. The trial court ordered payment of a commuted lump sum fee equal to a 25 percent contingency adjusted for interest and discounting (that is, taking 25 percent of past benefits with added interest, and 25 percent of projected future benefits discounted to present value).

Texas Mutual Insurance Company (Texas Mutual) appeals only the attorney's fee award, claiming: (1) the commutation of the fee award is at odds with the worker's compensation statute and a DWC rule; (2) the fees must be based on an hourly rate multiplied by the time spent, and not a contingency; (3) measured by the time and rate standard, some of the work claimed was not reasonable or necessary, and the hourly rate was excessive; and (4) a jury must decide the amount of the fees. Appellees, (collectively the DeJayneses), challenge our subject matter jurisdiction to hear this matter.

We conclude that we have subject matter jurisdiction. While we reject most of Texas Mutual's contentions, we agree that the hourly rate used to justify the fee included a risk modifier that the legislature has rejected in worker's compensation cases. Accordingly, we reverse the order on attorney's fees and remand for a new hearing solely on that issue.

## BACKGROUND

2

This case arises out of a workplace accident that took the life of Jaime DeJaynes.[4] He died in a single vehicle accident while driving a company work truck. The worker's compensation insurance carrier, Texas Mutual, initially paid Jaime's widow and children weekly death benefits under the Texas Worker's Compensation Act (the Act). Under the Act, a deceased worker's spouse is entitled to death benefits for life, unless the spouse remarries (and if remarried, then for only an additional 104 weeks). TEX.LAB CODE ANN. § 408.183(b). Qualifying children are entitled to benefits until they reach age 18, or up to age 25 if they are enrolled as a full-time student in an accredited education institution. *Id.* at § 408.183(c)(d). Benefits are based on a percentage of the deceased worker's average weekly wage. *Id.* at § 408.181.

Texas Mutual, however, stopped those payments after it obtained a toxicology report from Jaime's post-accident medical records. Under the Act, a blood test or urinalysis showing the voluntary introduction into the body of certain controlled substances creates a rebuttable presumption that the worker is intoxicated and does not have the normal use of mental or physical faculties. *Id*. at § 401.013(c). An insurance carrier is not liable for worker's compensation benefits if the injury "occurred while the employee was in a state of intoxication" as defined in the Act. *Id.* at § 406.032. In this case, the toxicology report showed the presence of Delta 9 Carboxy THC, which is a metabolite found in the blood after the ingestion of marijuana.

Disputed issues in worker's compensation claims must first be resolved through an administrative review process. *Id.* at § 410.024 (benefit review conferences); § 410.151 (contested case hearings); § 410.202 (administrative appeals); § 410.251 (requirement to exhaust administrative process prior to filing suit). Ms. DeJaynes challenged the carrier's suspension of benefits through that process. The DWC identified and resolved two issues: (1) was Jaime

---

[4] Mr. DeJaynes first name is spelled differently in the record. We use the "Jaime" spelling for clarity.

3

intoxicated so as to impair his normal functions (the applicable statutory test for an intoxication defense); and (2) did Texas Mutual waive that defense by not asserting it timely. As to this second issue, an insurance carrier is required to raise a defense within 60 days of receiving a claim unless the defense could not reasonably have been discovered earlier. *Id.* at § 409.021(c),(d). Texas Mutual contended that through no fault of its own, it did not obtain the toxicology report until 83 days after learning of the claim. Texas Mutual prevailed on both of these issues before the DWC.

Jaime's widow and children then appealed that adverse determination to a district court. The trial court then acquired jurisdiction over the two issues that had been administratively resolved. *Id.* at § 410.302 ("A trial under this subchapter is limited to issues decided by the appeals panel and on which judicial review is sought."). Texas Mutual filed a motion for partial summary judgment on the first issue--whether Jaime was intoxicated at the time of the accident. Texas Mutual prevailed on that motion when the DeJayneses effectively conceded the issue by not filing a response. The court tried the second issue--whether the carrier waived the defense--to a jury. This time, the DeJayneses prevailed and Texas Mutual does not contest that portion of the case on appeal. It has in fact paid past due benefits and restarted death benefits to the DeJayneses. Rather, we are asked to review only a separate order incorporated into the final judgment that awards the DeJayneses' attorney his fees.

Regarding attorney's fees, the DeJayneses' counsel filed a motion with the trial court that asked two things: (1) approve 25 percent of the benefits as the amount of the attorney's fees; and (2) to "commute" the fee such that Texas Mutual would advance the total amount due, rather than pay incremental portions of the fee as it made on-going benefit payments to the DeJayneses. As to the fee amount, the DeJayneses' counsel included his own affidavit that set out the terms of his fee contract. He also set out his qualifications, described the work done in the case, and described

4

what a comparative fee would be under a time and rate analysis. We add a bit more detail to each of those topics.

First, the Dejayneses and their counsel had previously entered into a written fee contract entitling the attorney to a 25 percent contingency fee from any benefits awarded to the DeJayneses. Because of their success at trial, the DeJayneses will potentially recover a total of $1,936,778.54. Broken down, that sum includes past-due benefits, that with interest, totals $144,978.54. Twenty-five percent of those past benefits amounts to $36,244.64 in fees. Based on life expectancy tables, Ms. DeJaynes will be paid future benefits for 40.4 years that when reduced to present value, totals $803,305.97. Twenty-five percent of that discounted sum amounts to $200,826.49, and when combined with the past due attorney's fees, they both total $237,071.13 in attorney's fees.

Counsel's affidavit further attests that he was well qualified to handle this matter, being: (1) board certified in worker's compensation law by the Texas Board of Legal Specialization; (2) having practiced law for 21 years in this area; and (3) being a frequent speaker at legal education seminars on worker's compensation.

Finally, several portions of the affidavit address the potential fee had the matter been calculated on a rate multiplied by hour basis. Counsel averred that he is familiar with the rates charged locally, as well as state-wide, on similar matters. He noted that the case was complicated from the standpoint of overcoming the marijuana issue, the uniqueness of the waiver issue, and the amount in controversy. He claimed that the proper hourly fee in the matter is $450 per hour:

> Although my attorneys' fee in this case is a contingency fee of 25%, for comparative purposes, my normal hourly rate for contingent legal services is $450.00 per hour. This is computed by taking into account my normal hourly rate of $300.00 for standard work which is paid by a client regardless of win or loss plus the contingent risk of loss that I bear on a contingent case.

In arriving at this hourly rate, counsel also considered a past agreement he had in another case with Texas Mutual, a survey of legal fees by "Texas Lawyer Magazine," counsel's experience from

5

approximately fifty jury trials, and his level of expertise. He acknowledges the DWC caps hourly fees at either $200 or $250 per hour depending on the issue.

Counsel then concluded that he expended approximately 457 hours of time on the matter, but that total does not include time by his staff, law clerks, or two associate attorneys. Nor does the estimate include future time he anticipated expending for filings before the DWC, nor expenses borne by his firm. The affidavit does not specify the amount of time spent on any particular task, but generally claims counsel expended time for the following services:

- Traveling to Austin, Texas, and Kansas City, Kansas, to consult with potential experts.

- Multiple trips to Monahans, Texas, to speak with potential witnesses, view the accident scene, appear in court proceedings, ascertain community beliefs and investigate the case.

- Conducting "monthly focus groups" on the case in Lubbock, Odessa, and Big Spring, to include travel.

- Filing the petition, conducting discovery, resolving discovery disputes, researching legal and medical issues, responding to pre-trial motions, and trying the case. In this regard, counsel claims that he was required by Texas Mutual to respond to unnecessary matters, such as discovery disputes that did not result in any material change to discovery, attending a hearing on an uncontested partial summary judgment motion, and traveling to Florida to depose Ms. DeJaynes, rather than taking her deposition telephonically.

Counsel also included Ms. DeJaynes's affidavit attesting that she was satisfied with counsel's representation, and she approved of the fee agreement.

Texas Mutual challenged the fee application. It argued that Section 408.221 of the Act requires that fees be "based on the attorney's time and expenses," and thus preclude a traditional contingency fee. Texas Mutual further argued that if considered only on a time and expense basis, the claimed $237,071.13 fee was unreasonable for a two-day trial involving a single issue. Before trial, the parties had taken only three depositions, and only three witnesses testified at trial. It

attached as an exhibit a billing memo from the DeJayneses' counsel obtained through discovery. The billing memo, with some redactions, itemized the 457 hours in various time entries. The memo included block entries, such as eight hours of "travel" with no other detail provided. Texas Mutual's own attorneys charged no more than $195 in that locality. A State Bar study found the median hourly rate for a 21-year practitioner in "West Texas" was $273 dollars per hour in 2015.[5] And even accepting the claimed $450 hourly rate, and the time claimed, the resulting attorney's fee totals $205,650, some $31,000 less than the 25 percent contingency amount. Texas Mutual suggested the trial court approve $79,375 as a reasonable fee. Finally, it challenged the commutation of the fee, instead arguing that any fee should be paid out over time.

The trial court entered a judgment that reversed the final decision and order of the DWC. The final judgment also ordered a lump-sum payment of attorney's fees in accordance with a separately filed order. That order approved attorney's fees of $237,071.13, commuted and to be paid in lump sum.

**ISSUES ON APPEAL**

Texas Mutual brings six issues on appeal. As a matter of statutory construction, its first two issues contend that a trial court could not commute attorney's fees for future death benefits because the amount: (a) might exceed a statutory 25 percent cap on fees; and (b) under a DWC rule, commuted fees can only be paid out of a "sum certain award or order to pay benefits," neither of which are present here. Also as a matter of statutory construction, Texas Mutual contends in its third issue that the trial court erred in approving a contingency fee, rather than an award based on

---

[5] The work performed for this case began in December 2015 and ended in September 2017. The State Bar study was based on a survey of practitioners. Fourteen practitioners in "West Texas" with 21 or more years of experience provided survey responses from which the median was determined. The "median" is the number found at the exact middle of the set of values. A median can be computed by listing all numbers in ascending order and then locating the number in the center of that distribution.

the attorney's time and expenses. Its next two issues challenge the amount of the fee if based on time and expenses, because the rate includes a multiplier based on the risks of contingency cases (Issue Four), and the time expended was excessive for the nature of the case (Issue Five). Finally, Issue Six argues that if commutation is appropriate, Texas Mutual had a right to have a jury decide the reasonable amount of the fee.

The DeJayneses respond to these issues, but at the outset contend that we lack subject matter jurisdiction to hear the case because Texas Mutual lacks standing to complain about the amount of the fee. We begin with that issue.

## STANDING

If a worker appeals an adverse decision from the DWC, and then prevails at the trial court, the worker's attorney is entitled to attorney's fees paid out of the worker's recovery. TEX.LAB CODE ANN. § 408.221(a),(b). So here, the Dejayneses were entitled to weekly death benefits, and any attorney's fee would ordinarily be paid out of those sums on an on-going basis. The DeJayneses' counsel asked that those fees, however, be commuted--meaning that the payout over Ms. DeJaynes's expected lifetime was calculated, reduced to present value, and the gross amount of the fee calculated so it could be paid immediately. Nonetheless, the amount of the fee still comes out of the worker's recovery, and the DeJayneses contend that Texas Mutual as a stranger to the fee contract lacks standing to challenge it.

Standing is a prerequisite to subject matter jurisdiction, which is essential to a court's power to decide a case. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Because it implicates our subject matter jurisdiction, standing cannot be waived, and can be raised for the first time on appeal. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445-46; *Nauslar v. Coors Brewing*

8

*Co.*, 170 S.W.3d 242, 248 (Tex.App.--Dallas 2005, no pet.). We would have an obligation to raise the issue ourselves. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445-46 (noting that standing "may be raised for the first time on appeal by the parties or by the court"); *Martin v. Clinical Pathology Laboratories, Inc.*, 343 S.W.3d 885, 888 (Tex.App.--Dallas 2011, pet. denied)("Thus, standing cannot be waived, and we may examine standing sua sponte if necessary.").

Standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). The general test for standing requires that there be a real controversy between the parties that will actually be determined by the judicial declaration sought. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Lovato*, 171 S.W.3d at 849. This means that litigants must be "properly situated to be entitled to [a] judicial determination." *Lovato*, 171 S.W.3d at 849.

A party who is personally aggrieved by an alleged wrong has standing to sue. *Nootsie Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). Moreover, a party has standing if they (1) have sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act complained of; (2) have a direct relationship between the alleged injury and claim sought to be adjudicated; (3) have a personal stake in the controversy; (4) have suffered some injury in fact, either economic, recreational, environmental, or otherwise; or (5) are an appropriate party to assert the public's interest in the matter, as well as their own. *Taylor v. Margo*, 508 S.W.3d 12, 24-25 (Tex.App.--El Paso 2015, pet. denied), *cert. denied*, 137 S.Ct. 391 (2016), *citing Nauslar*, 170 S.W.3d at 249.

The DeJayneses focus on language from our opinion in *State Off. of Risk Mgt. v. Olivas*, 509 S.W.3d 499 (Tex.App.--El Paso 2016, no pet.). *Olivas* also involved a dispute over the amount of commuted attorney's fees to be paid following a district court trial. In approving the worker's

attorney's fee request, we stated that the insurance carrier "is a stranger to this dispute, other than it was required to disburse the attorney's fee from sums it was already responsible for paying." *Id.* at 509. That conclusion was not made, however, in reference to a standing dispute. Instead, we considered the carrier's relationship to the fee agreement in the context of how much evidence was necessary to support the fee award. *Id.* Indeed, if the carrier lacked standing in *Olivas*, we would have dismissed the case for want of jurisdiction and not reached the merits. *See Garcia v. City of Willis*, No. 17-0713, 2019 WL 1967140, at *2 (Tex. May 3, 2019)(even though not raised by the parties, "we are duty-bound to determine whether [standing] exists[.]").

And here, we conclude that Texas Mutual has a sufficient relationship to the issue of attorney's fee issue to give it standing. Texas Mutual was ordered to advance the entire amount of attorney's fee that would otherwise be payable out of the DeJayneses' weekly benefit checks. That stream of payments is based on actuarial tables that may or may not reflect Ms. DeJaynes's actual lifespan. That stream could also end should Ms. DeJaynes ever decide to remarry. Thus, by paying a commuted fee, Texas Mutual is being asked to accept the risk that Ms. DeJaynes will live to at least her estimated life expectancy, or not remarry. Acceptance of that risk gives it a personal stake in the controversy, and at least some potential injury in fact. *See CenterPoint Energy Entex v. R.R. Commn. of Texas*, 213 S.W.3d 364, 368 (Tex.App.--Austin 2006, no pet.)(utility complaining of franchise fee had standing even though it *might* have recovered the full amount over time from municipal customers). That interest also distinguishes this case from the proposition stated in *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 229 (Tex. 2010) that "[t]he insurance carrier can only be said to pay these fees in the technical sense that it drafts a separate check for the attorney's fees, payable directly to the claimant's attorney." The DeJayneses' cross-point challenging standing is overruled.

In its first two issues, Texas Mutual challenges the trial court's order that commuted the attorney's fee amount. Issue One contends the award could potentially exceed the statutory 25 percent cap on fees. Issue Two contends that a DWC rule only allows commutation out of a "sum certain award or order to pay benefits." Because both arguments turn on construction of a statute or administrative rule, we start with our applicable standards for doing so.

## Standard of Review

Statutory construction is a legal question that we review *de novo. Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Our primary focus in statutory interpretation is to give effect to legislative intent, considering the language of the statute, as well as its legislative history, the objective sought, and the consequences that would flow from alternate constructions. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We consider the words in context, and not in isolation. *In re Office of the Atty. Gen. of Texas*, 456 S.W.3d 153, 155 (Tex. 2015)("Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases"). We must presume that every word in a statute has been used for a purpose and that every word excluded was excluded for a purpose. *City of Richardson v. Oncor Electric Delivery Co.*, 539 S.W.3d 252, 260 (Tex. 2018).

These general rules apply unless enforcing the plain language of the statute as written would produce absurd results. *Entergy*, 282 S.W.3d at 437; s*ee C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 322 n.5 (Tex. 1994)("Statutory provisions will not be so construed or interpreted as to lead to absurd conclusions, great public inconvenience, or unjust

discrimination, if the provision is subject to another, more reasonable construction or interpretation."). Stated another way, we are required to presume that the legislature has acted reasonably. TEX.GOV'T CODE ANN. § 311.021(3)(legislative enactments intend "a just and reasonable result.").

And because Texas Mutual also directs us to an administrative rule, we note that courts should interpret an administrative rule as it would a statute, applying traditional principles of statutory construction. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *Diaz v. R & A Consultants*, 579 S.W.3d 460, 474 (Tex.App.--El Paso 2019, pet. filed).

### The 25 Percent Cap

Texas Mutual first argues that commutation of the attorney's fee could violate the 25 percent cap on fees found in Section 408.221 of the Act. The relevant text of the statute reads:

> (e) The commissioner by rule or the court may provide for the commutation of an attorney's fee, except that the attorney's fee shall be paid in periodic payments in a claim involving death benefits if the only dispute is as to the proper beneficiary or beneficiaries.
>                                     . . .
> (i) Except as provided by Subsection (c) or Section 408.147(c), an attorney's fee may not exceed 25 percent of the claimant's recovery.[6]

TEX.LAB CODE ANN.§ 408.221. Texas Mutual argues that if the fee is commuted, it is possible that the fee might exceed the 25 percent cap. For instance, Ms. DeJaynes could remarry, and while her benefit checks would stop, Texas Mutual would have already paid out an attorney's fee that might be in excess of the cap. Or, if she passed away earlier than the life-expectancy tables predict, the total attorney's fees could also exceed the 25 percent cap.

We are not cited to any case law directly addressing Texas Mutual's argument. Earlier case law--decided under the prior worker's compensation statute--allowed commutation of

---

[6] Neither of the exceptions would apply here. Subsection (c) governs situations where the carrier appeals and loses. Section 408.147(c) governs contests of supplemental income benefits.

12

attorney's fee even where the future stream of payments was not necessarily fixed, including payments to a spouse that could have terminated upon remarriage. *See Texas Emp. Ins. Ass'n v. Clapper*, 605 S.W.2d 938, 943 (Tex.App.--Houston [1st Dist.] 1980, no writ); *Texas Employers' Insurance Association v. Flores*, 564 S.W.2d 831, 833 (Tex.App.--Fort Worth 1978, writ ref'd n.r.e.); *Liberty Mutual Insurance Company v. Ramos*, 543 S.W.2d 392, 393 (Tex.App.--El Paso 1976, writ ref'd n.r.e.). These cases relied on the Texas Supreme Court's decision in *Tex. Employers Ins. Ass'n v. Motley,* 491 S.W.2d 395 (Tex. 1973). *Motley* held that a trial court had the discretion to commute an award, noting that the structure of the prior law restricted commutation at the administrative level, but not once the case was appealed to a court. *Id*. at 396. *Motley* notes that the amount of the future payments to the worker would be fixed in the judgment, so there was no question as to the total amount of the worker's award from which the attorney's share could be calculated. *Id*. Texas Mutual counters that the law in effect at that time did not have an absolute cap of 25 percent on the fees, as does the present statute.[7]

We also addressed commutation in *Olivas*. But there, the carrier based its argument on provisions of the Act that generally said that neither by settlement, nor court judgment, can future benefits be paid in a lump sum. TEX.LAB.CODE ANN. §§ 410.257(b), 408.005(a). From this, the carrier in *Olivas* argued that if the attorney's fees are really being paid out of the worker's recovery, the attorney's fee must also be paid over time. We rejected that claim, in part because Section 408.221(e) specifically allows for commutation in all but uncontested death benefit cases. 509 S.W.3d at 511. Moreover, the legislature is presumed to know the existing law when it enacts a

---

[7] But to the contrary, Texas Mutual's argument was seemingly addressed by the court in *Flores* which framed the issue this way: "May the law sanction payment by first party to a third party of a contingent obligation of the second party, when the obligation of the second party to make the payment might never occur?" 564 S.W.2d at 833. *Flores* also noted that the law controlling its appeal included a 25 percent cap, and it held the trial court did not abuse its discretion in awarding a commuted fee in a death benefits case. *Id.* at 832, 834.

statute, and commutation of attorney's fee awards was accepted prior to the adoption of the new Act. *Id.* at 512, *citing* TEX. GOV'T CODE ANN. § 311.023(4)(in construing a statute, a court may consider "common law or former statutory provisions, including laws on the same or similar subjects"). Had the legislature wanted to disallow commutation of attorney's fees, it could have done so, but instead it specifically permitted them. We reserved decision on other potential challenges to commutation that the carrier had not urged in *Olivas*. 509 S.W.3d at 512 n.9 (noting the carrier had not argued uncertainties of life expectancy tables or interest rate risks).

We reject Texas Mutual's argument, however, because it would literally require every fee in a death case to be based on a contingency, which is contrary to the wording of the statute, and Texas Mutual's other arguments. An example makes the point. Texas Mutual suggested below that the trial court approve $79,375 as a reasonable fee. But even that amount might exceed the 25 percent cap if Ms. DeJaynes remarried or passed away within a short time of the judgment. The only way to absolutely ensure that the 25 percent cap is not exceeded, would be to require some contingency fee of 25 percent or less that is paid out over time. That way, if the underlying benefit payments stopped, so too would the stream of attorney's fees. But the plain text of the statute does not require that attorney's fee always be stated as a contingency. Instead, a contingency is only one alternative, and every fee must be supported by evidence of the actual time and expenses of the attorney. TEX.LAB.CODE ANN. § 408.221(a),(b).

Texas Mutual suggests that we can harmonize the provisions so that courts could commute "future benefits only when the awarded fees fall short enough of the statutory cap such that exceeding the cap is highly unlikely." That is hardly a workable standard. It would require the trial court to assess the likelihood of remarriage, or the health of the statutory beneficiaries, and then define what is "highly unlikely." It would leave trial courts little guidance on how close the

14

attorney's fee would be to the 25 percent threshold before it is too close. And in this case, that factual determination might well have been more fact intensive than the underlying issue that was actually tried to the jury. As our supreme court has counseled, courts should not encourage "satellite litigation as to attorney's fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 503 (Tex. 2019). Texas Mutual's proposed construction would do just that.

We accordingly reject Texas Mutual's claim that the 25 percent fee cap bars commutation of attorney's fee award when on-going payments might be terminated upon some future event. It is enough that the approved fee, based on the expected benefit stream, does not exceed the 25 percent cap.

## Sum Certain

Texas Mutual's second argument contends that administrative rule 152.1(d) only allows commutation out of a "sum certain award or order to pay benefits." 28 TEX. ADMIN. CODE § 152.1(d)(2019)(Tex.Dep't of Ins., Attorney Fees: General Provisions). Contending that neither exist here, it claims commutation is not available. The full text of the rule provides in relevant part:

> An attorney's fee for representing a claimant may upon request by the attorney or carrier and approval by the commission be commuted to a lump sum *only out of a sum certain award or order to pay benefits*. This commuted fee may be discounted for present payment at the rate provided under the Act, § 401.023, and shall not exceed 25% of the unpaid sum certain. A commuted fee shall be recouped by the carrier out of the future income benefits paid to the represented claimant, not to exceed more than 25% out of any single payment. The fee for representing a claimant for death benefits cannot be commuted where the only dispute involves identification of the proper beneficiaries.

*Id.* (emphasis added). Texas Mutual points us to the use of the term "sum certain" in other contexts, claiming it excludes amounts based on actuarial forecasts. *See Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 234 (Tex.App.--Austin 1996, pet. denied)(under franchise tax statute, holding that estimated future retirement liabilities were not "a sum certain" and thus did not fall

15

within the statutory definition of "debt" under the statute). It also notes that the "sum certain" rule post-dates earlier judicial decisions allowing commutation in death benefit cases.[8]

We conclude, however, that the argument fails for several reasons. First, Rule 152.1(d) expressly references approval by the DWC of commuted fees, and not the district court. Next, the rule requires that a commuted fee be paid "out of a sum certain award or order to pay benefits." 28 TEX. ADMIN. CODE § 152.1(d). And while the trial court's judgment did not include a specific order to pay benefits, that was the natural result of its reversal of the DWC's previous orders. Third, reading the rule in context, as we must, undermines Texas Mutual's claim. The last sentence of the rule states: "The fee for representing a claimant for death benefits cannot be commuted where the only dispute involves identification of the proper beneficiaries." *Id*. That language implies that commutation of benefits would be allowed in death benefit claims when some *other* issue was contested. Finally, most death beneficiaries receive a future stream of benefits that might be cut off on the happening of some future event. Eligible spouses are paid lifetime benefits until they die or remarry. TEX.LAB.CODE ANN. § 408.183(b). Eligible children are paid benefits until age 18, or possibly until age 25 if they are in school. *Id*. at § 408.183(c)(d). Eligible grandchildren are entitled to benefits until they reach 18, or if they are already 18, then for a set number of weeks. *Id*. § 408.183(f). But even that fixed amount of benefits would terminate on the death of the grandchild. *Id*. Certain eligible dependents are entitled to lifetime benefits that terminate on the death of the dependent, or the end of the physical or mental disability that renders them dependent. *Id*. at § 408.183(e). Similarly, if there is no spouse, child, grandchild or dependent, a parent

---

[8] The rule was adopted in 1994, while the several cases we noted in Olivas were all decided before that date. *Cf.* 19 Tex. Reg. 2548 (1994)(adopting rule) with *Texas Emp. Ins. Ass'n v. Clapper*, 605 S.W.2d 938, 943 (Tex.App.--Houston [1st Dist.] 1980, no writ); *Texas Employers' Insurance Association v. Flores*, 564 S.W.2d 831, 833 (Tex.App.--Fort Worth 1978, writ ref'd n.r.e.); *Liberty Mutual Insurance Company v. Ramos*, 543 S.W.2d 392, 393 (Tex.App.--El Paso 1976, writ ref'd n.r.e.).

receives a set number of weekly benefits. *Id*. at § 408.183(f-1). Yet those set benefits would also terminate on the death of the parent. *Id*. Because all these scenarios lack a "sum certain" they would not qualify for commutation under Texas Mutual's reading of rule. But that interpretation would effectively read the last sentence of Rule 152.1(d) out of the rule, and violate the presumption that every word in a statute has been used for a purpose. *Oncor Electric Delivery*, 539 S.W.3d at 260.[9] We overrule Issues One and Two.

### CONTINGENCY OR MODIFIED LODESTAR?

In Texas Mutual's next three issues, it challenges the fee award because it is based on a contingency and not an hourly rate multiplied by the hours worked. It also contends the hourly rate used for comparison purposes is based on an improper risk multiplier. Finally, Texas National claims many of the hours spent were unjustified.

Texas Mutual's argument returns us to the construction of Section 408.221 that we faced in *Olivas*. The relevant portion of the statute provides:

(a) An attorney's fee, including a contingency fee, for representing a claimant before the division or court under this subtitle must be approved by the commissioner or court.

(b) Except as otherwise provided, an attorney's fee under this section is based on the attorney's time and expenses according to written evidence presented to the division or court. Except as provided by Subsection (c). . . , the attorney's fee shall be paid from the claimant's recovery.

. . .

(d) In approving an attorney's fee under this section, the commissioner or court shall consider:

(1) the time and labor required;
(2) the novelty and difficulty of the questions involved;
(3) the skill required to perform the legal services properly;
(4) the fee customarily charged in the locality for similar legal services;
(5) the amount involved in the controversy;
(6) the benefits to the claimant that the attorney is responsible for securing; and

---

[9] Given our resolution of this issue, we need not reach the DeJayneses' alternate claim that a court's application of the DWC's rules violates the separation of powers doctrine.

(7) the experience and ability of the attorney performing the services.

TEX.LAB.CODE ANN. § 408.221. Subsection (a) expressly contemplates that contingency agreements might be approved by either the DWC or a court. Subsection (b), however, provides that an attorney's fee must be based on the attorney's time and expenses. Subsection (d) further sets out seven of the factors that the Texas Disciplinary Rules for Professional Conduct use for determining a reasonable fee. TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (State Bar Rules, art. X, § 9); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997)(adopting Rule 1.04 criteria for use in judging reasonableness and necessity of attorney's fees). The statute omits, however, the eighth factor: "whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *Cf.* TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(b)(8) *with* TEX.LAB.CODE ANN.§ 408.221(d)(1-7).

We faced a similar issue in *Olivas*, where the insurance carrier challenged the commuted attorney fee in a lifetime benefits case. The trial court approved a fee based on a 25 percent contingency. 509 S.W.3d at 502. The attorney had also included an affidavit that addressed each of the Section 408.221(d) factors, albeit some in an abbreviated fashion. *Id.* at 509. In particular, the attorney had not included the total hours expended in the case, or any one particular task. Yet the record before the trial court would have informed the trial court of the substantial work that had been done: the case involved "twelve benefit review conferences and six contested case hearings, resulting in six appeals to the DWC's Appeals Panel, and two suits for judicial review." *Id.* at 501. We concluded that the trial court had not abused its discretion in approving the 25 percent contingency fee. *Id.* at 510. Two facets of the *Olivas* decision are important here.

First, we concluded that the purpose of the trial court approving the fee under Section 408.221(b) is primarily "to protect the worker from any potential overreaching by her own

18

attorney." *Id.* at 509, *citing Fidelity Union Cas. Co. v. Dapperman*, 53 S.W.2d 845, 847 (Tex.App.--Amarillo 1932, writ ref'd)(approval of attorney's fee is intended to "protect the helpless and unwary from unconscionable contracts"). This function reconciles subsection (a)'s allowance of contingency agreements, with subsection (b)'s requirement that a court consider the time and expense expended by the attorney, as well as subsection (d)'s inclusion of most of the Disciplinary Rule 1.04 factors. A hypothetical illustrates the point. Assume that in a case such as this, the worker's attorney was able to convince the insurance carrier to capitulate its position with a single phone call at the outset of the case. In that situation, the trial court would have to consider if the amount of time expended justifies the 25 percent contingency agreement between lawyer and client, and the court might well conclude that it would not.[10] So as we said in *Olivas*, the fact of the contingency agreement by itself will not support a trial court's approval of such a fee. The lawyer must offer evidence to meet the requirements in Section 408.221(b) and (d). And once the lawyer does so, we review the trial court's decision for an abuse of discretion. *Id*. at 510, *citing Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). In conducting that review, must decide whether the trial court had sufficient evidence before it to exercise that discretion. *Id*., *citing Alford v. Johnston*, 224 S.W.3d 291, 298 (Tex.App.--El Paso 2005, pet. denied).

---

[10] Compare how federal courts treat fee applications in social security cases. By statute, when a court awards past due benefits, it may allow "a reasonable fee . . . not in excess of 25 percent of the . . . past-due benefits" awarded to the claimant's attorney. 42 U.S.C. § 406(b)(1)(A). The fee is payable out of the claimant's benefits. *Id*. The Court has recognized that most social security claimants are represented under a contingency fee agreement, and the federal statute does *not* require a lodestar analysis of the fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 803, 808-09 (2002). The claimant's attorney must show, however, that the fee sought is reasonable for the services rendered within the 25 percent boundary. *Id.* at 795; *see also Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989)(justifying reductions from a 25 percent contingency based on "improper conduct or ineffectiveness of counsel" or "situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended."); *McGuire v. Sullivan*, 873 F.2d 974, 981 (7th Cir. 1989)("In all cases, the court should consider the reasonableness of the contingency percentage to make sure the attorney does not receive fees which are out of proportion to the services performed, the risk of loss and the other relevant considerations.").

19

The second distinction that we drew in *Olivas* is that the order to pay attorney's fees from a worker's recovery is not the same as fee-shifting that occurs in other contexts. When one party seeks to have the opposing party pay their fees, courts will require the party seeking a fee to prove the reasonableness and necessity of the requested attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 484. They do so through the "lodestar" formula:

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)(citations omitted). And there is little doubt that the affidavit in this case would not provide sufficient information to meet the lodestar test. The affidavit provided only a total number of hours with no breakdown of activities. *Cf. City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013)(claim that attorney spent 1,356 hours reviewing thousands of documents and preparing for trial insufficient); *El Apple*, 370 S.W.3d at 763 (affidavit that provided gross number of hours was insufficient). These cases, however, were fee-shifting cases where one litigant attempted to have their opponent pay its attorney's fee. *Montano*, 414 S.W.3d at 736; *El Apple*, 370 S.W.3d at 763; s*ee also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)("The 'lodestar' figure has, as its name suggests, become the guiding light of our *fee-shifting jurisprudence*.")(emphasis added). We distinguished fee-shifting cases in *Olivas*, noting that under Section 408.221, the trial court was approving an attorney's fee ultimately to be paid by the injured worker to her own counsel. 509 S.W.3d at 509, *citing Arthur Anderson*, 945 S.W.2d at 818 (stating that while a contingent fee may be "a reasonable fee from the standpoint of the parties to the contract" more would be required to make the fee reasonable for purposes of shifting the fee to the other side).

20

Applying these principles, we reject all but one of Texas Mutual's attack on the amount of the fee. First, we conclude that the trial court would not have abused its discretion in upholding a 25 percent contingency fee simply because it was a contingency. The text of Section 408.221(a) expressly contemplates that contingency agreement could be approved. That plain text belies Texas Mutual's argument that contingency agreements are always improper as a matter of law. And while Texas Mutual suggests that Section 408.221(a) might be referring to some other kind of contingency agreement, it does not explain what that might be. A contingent fee agreement is commonly understood:

> Fees for legal services in litigation may be either "certain" or "contingent" (or some hybrid of the two). A fee is certain if it is payable without regard to the outcome of the suit; it is contingent if the obligation to pay depends on a particular result's being obtained. Under the most common contingent-fee contract for litigation, the attorney receives no payment for his services if his client loses.

*Dague*, 505 U.S. at 560-61; *see also Contingent fee*, Black's Law Dictionary 387 (10th ed. 2014) (defining contingent fee as: "A fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court. Contingent fees are usually calculated as a percentage of the client's net recovery[.]"). The express reference to contingency agreements in Section 408.221(a) must mean something. The fact that a fee is based on a contingency, therefore, does not disqualify it for that reason alone. We accordingly overrule Issue Three.

We also find Texas Mutual's challenge to the amount of time spent unavailing. It focuses on the amount of time for: travel (161 hours); focus groups (40 hours); meeting with experts (16 hours); attending the summary judgment hearing (9 hours); and investigating the intoxication issue (50 hours). For several of these issues, the DeJayneses claim that Texas Mutual forced the issue. For instance, Ms. DeJaynes was deposed in Florida at Texas Mutual's insistence when she was offered for a telephonic deposition and had no real knowledge of the single issue submitted to the jury. Additionally, the DeJayneses claim that Texas Mutual insisted on the summary judgment

21

hearing that could have been decided on written submission. As to the other items, the DeJayneses claim the gravity of the suit required consulting with experts, even though an eventual decision was reached to try the case on fact witnesses alone. We defer to the trial court on these particular matters and note that it had some evidence from which to hear and reject these specific challenges.[11] Issue Five is overruled.

We must agree, however, with Texas Mutual's argument on the appropriate hourly rate. Texas Mutual offered a State Bar of Texas study on legal fees that for 2015 found the median billing rate for highly experienced attorneys in West Texas was $273 per hour. The DeJayneses' attorney referenced another publication reporting the statewide average billing rate of $267 per hour (and $300 per hour in the Dallas area). And importantly here, the DeJayneses' counsel averred that his usual billing rate is $300 per hour, but because this was a contingency matter, he used a $450 per hour rate. A careful review of Section 408.221(d) leads us to conclude that the contingency nature of the fee agreement cannot be used--at least in this manner--to enhance the fee. When the legislature adopted Section 408.221(d), it lifted seven factors from the Texas Rules of Disciplinary Procedure used to evaluate fee agreements. It omitted an eighth factor that would also consider "whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(b)(8). Elements of that eighth factor had been discussed in the case law as early as the Fifth Circuit's influential opinion in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). Its

---

[11] Of all these matters, the amount of travel is the most troubling, amounting to almost a solid month of travel time. Courts have considerable discretion in evaluating travel time, and may, in their discretion reduce working and non-working travel time. *Am. Zurich Ins. Co. v. Jasso*, 598 Fed. Appx. 239, 249-50 (5th Cir. 2015)(unpublished), *citing In re Babcock & Wilcox Co.,* 526 F.3d 824, 828 (5th Cir. 2008) (per curiam) and *Watkins v. Fordice,* 7 F.3d 453, 458–59 (5th Cir. 1993). Nonetheless, we leave to the trial judge the intricacies of travel in the vast plains of West Texas.

omission from Section 408.022(d) must be accorded significance. And its inclusion in the analysis here was far more than trivial.

The DeJayneses' attorney sought a $237,071.13 fee based on a 25 percent contingency. Taking the 457 hours claimed, multiplied by the $450 rate, nets a fee of $205,650, which is some $31,000 less than the sum awarded. Stripping away the contingency enhancement leaves a $300 hourly rate which results in a $137,100 fee, almost $100,000 less than what was awarded. This seems to us like a double enhancement based on a factor the legislature sought to exclude in the approval of a fee. That is, the fact of the contingent nature of the case is first used to jump the normal hourly fee from $300 to $450 per hour (a 50 percent increase), and then is used again to justify the gap between a time and hour fee and the 25 percent contingency. This was just the sort of double counting the Texas Supreme Court recently disapproved of in *Rohrmoos*. 578 S.W.3d at 500 ("And an enhancement or reduction of the base lodestar figure cannot be based on a consideration that is subsumed in the first step of the lodestar method.").

Accordingly, we sustain Issue Four and remand the case for consideration of the fee in accordance with this opinion. We emphasize, however, that because this is not a true fee-shifting case, a strict application of the lodestar formula is not required. The trial court here approves the attorney's fee but must have before it evidence as required by Section 408.221(b) and (d). How it evaluates that evidence lies within the trial court's discretion. We remand only because one significant piece of that evidence included a factor that the legislature has deemphasized in worker's compensation cases. On remand, the total number of hours spent by all of the DeJayneses' counsel and legal assistants, considered in light of appropriate hourly rates, and including all of their expenses, may or may not just the total fee sought here. We leave that to the trial court to decide.

**JURY OR BENCH TRIAL**

Texas Mutual finally contends in Issue Six that it is entitled to have a jury decide the appropriate fee. The Texas Supreme Court held in *Crump* that when an insurance carrier is asked to pay the worker's attorney fees out of its own funds under Section 408.221(c), it has a right to a have a jury determine the amount of fees. *Crump*, 330 S.W.3d at 227 ("We hold that when a question of fact exists on the reasonableness and necessity of a claimant's attorney's fees under § 408.221(c), the carrier has a right to submit that question to a jury."). But it also noted that it would be improper for a Section 408.221(b) attorney's fee to be determined by a jury. *Id.* at 229-30, *quoting Tex. Employers Ins. Ass'n v. Hatton*, 255 S.W.2d 848, 849 (1953)("The amount of attorney's fees to be allowed in a compensation case is exclusively for the court and not the jury[.]"). And the fees in this case were approved under Section 408.221(b).

Texas Mutual attempts to distinguish *Crump*, however, based on the commutation of the fee. That is, because it is assuming the risk that the DeJayneses might not live to life expectancy, or might otherwise trigger an early termination of benefits, it has enough stake in the controversy to entitle it to litigate the attorney's fee issue before a jury. We reject the argument for one reason.

The issue of a jury trial was first raised in a motion to modify the judgment, well after a final judgment was signed, and the trial court had already ruled on the attorney's fee issue. The DeJayneses filed an original Motion for Approval of Attorney's Fees on August 23, 2017 that they amended on October 2, 2017. Texas Mutual filed a response which did not ask for jury trial, but rather asked the trial court to set a fee of $79,375. The trial court heard the matter and signed its order on attorney's fee on May 22, 2018. On June 21, 2018, Texas Mutual filed its motion to modify the judgment which for the first time first sought jury trial. At the same time, it filed its demand for jury trial. We treat this issue as we would the denial of a motion for new trial which

is addressed to the trial court's discretion--its ruling will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *See Waffle H., Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Dir., State Employees Workers' Compen. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). Having expended its own time and resources deciding the question of attorney's fees, the trial court could well have exercised its discretion to deny the motion which essentially requested a do-over before a jury.

Accordingly, we overrule Issue Six. Based on Issue Four, however, we reverse the order awarding attorney's fees and remand for consideration in accordance with this opinion. Otherwise, the judgment below is affirmed.


ANN CRAWFORD McCLURE, Chief Justice (Senior Judge)

November 25, 2019

Before Rodriguez, J., Palafox, J., and McClure, C.J. (Senior Judge)
McClure, C.J. (Senior Judge), sitting by assignment