# IN THE SUPREME COURT OF TEXAS

No. 15-0025

TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION, PETITIONER,

v.

BONNIE JONES AND AMERICAN HOME ASSURANCE COMPANY, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

**Argued March 30, 2016**

JUSTICE WILLETT delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE BOYD filed a dissenting opinion.

The Texas workers' compensation regime was overhauled just over a quarter-century ago amid complaints of high costs for employers and low benefit rates for workers—inefficiencies that had reached "crisis proportions."[1]

The Legislature, concerned with attorney involvement in even the most routine, small-dollar claims, determined that one way to control costs was to constrain judicial review of agency determinations. Another cost-cutting reform: a formula that precisely provides how certain

---

[1] *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 512 (Tex. 1995).

benefits are to be calculated. Eligibility for benefits requires satisfaction of detailed and particular conditions, and courts do not have carte blanche to approve settlements awarding benefits that clash with these criteria. Where supplemental income benefits are concerned, settlements cannot bypass a statutory formula, nor can they facilitate benefits where none were due as a matter of law. But in this case, the trial court approved a noncompliant settlement, and the court of appeals affirmed. In the comp arena, the Legislature has mandated administrative certainty—stability that this settlement unsettles. Accordingly, we reverse the court of appeals' judgment and remand to the trial court for proceedings consistent with this opinion.

## Factual Background

Bonnie Jones was injured in 2005 during the course of her employment. Her employer's comp carrier, American Home Assurance Company (American Home), paid her various benefits. She later made three claims for supplemental income benefits (SIBs) for the periods known as the twelfth, fourteenth, and fifteenth quarters of 2011. The parties disagreed over whether Jones was entitled to SIBs for the fourteenth quarter.[2] A contested case hearing ensued—a species of administrative adjudication. Among other findings, the hearing officer made a finding of fact that Jones did not make an active effort to obtain employment for each week during the fourteenth quarter and accordingly was not entitled to benefits for that period. An appeals panel affirmed the decision.

Jones then sued American Home in district court, arguing she was entitled to SIBs for the fourteenth quarter. The Department of Insurance's Division of Workers' Compensation (Division)

---

[2] The parties disagree over the exact duration of this period, but that difference is one of only a day.

2

intervened after receiving a proposed judgment approving the settlement at issue here. Under the settlement, Jones and American Home agreed that Jones was entitled to a partial award of SIBs, amounting to $1,572.90. The Division drew attention to the administrative determination that Jones had not fulfilled the mandatory work search requirements for the fourteenth quarter, and that a partial SIBs award flouts the statutory formula's edict to calculate the monetary entitlement in a precise way.

The trial court approved the proposed settlement, and the Division appealed. The court of appeals did not address whether the trial court should have considered whether Jones satisfied the requisite work-search requirements. Homing in on a general policy of encouraging settlement, and ignoring the particularities that the revamped workers' comp scheme provides, the court of appeals affirmed the trial court's judgment.[3] This appeal followed.

**Injured workers are eligible for SIBs when they satisfy precise criteria, and the Labor Code forbids settlements that provide awards when these requirements have not been met.**

The Code allows parties to seek judicial review[4] of the Division's determination of "eligibility for supplemental income benefits."[5] The claimant must have "demonstrate[d] an active effort to obtain employment" during each week of the "qualifying period."[6] The Division, pursuant to its rulemaking authority, has further specified:

---

[3] ___ S.W.3d ___, ___.

[4] *See generally* TEX. LAB. CODE §§ 410.251–.258.

[5] 28 TEX. ADMIN. CODE § 130.102.

[6] *Id.* § 130.102(d)(1).

3

(1) An injured employee demonstrates an active effort to obtain employment by meeting at least one or any combination of the following work search requirements each week during the entire qualifying period:

(A) has returned to work in a position which is commensurate with the injured employee's ability to work;

(B) has actively participated in a vocational rehabilitation program as defined in § 130.101 . . . ;

(C) has actively participated in work search efforts conducted through the Texas Workforce Commission (TWC);

(D) has performed active work search efforts documented by job applications; or

(E) has been unable to perform any type of work in any capacity, has provided a narrative report from a doctor which specifically explains how the injury causes a total inability to work, and no other records show that the injured employee is able to return to work.[7]

An employee may also receive benefits if she has "reasonable grounds for failing to comply with the work search requirements."[8] One cannot be partially eligible for SIBs. Under the Code, injured workers are either eligible or ineligible.

Moreover, an injured worker seeking SIBs must demonstrate that "he or she has, each week during the qualifying period, made the minimum number of job applications and or work search contacts consistent with the work search contacts established by TWC which are required for unemployment compensation in the injured employee's county of residence."[9] Once again looking to the plain meaning of this text, "minimum" means "the least quantity assignable, admissible, or

---

[7] *Id.*

[8] *Id.* § 130.102(d)(2).

[9] *Id.* § 130.102(f).

4

possible in a given case."[10] Further, a criterion is "required" if it is necessary or essential[11]—without its satisfaction, rights vanish.

Thus, an injured worker must fully meet the necessary minimum work search requirements in order to be SIBs-eligible. In this case, the parties dispute whether Jones made the necessary number of work searches during the fourteenth quarter in order to qualify for SIBs during that period. The Division made a finding of fact that she did not—a finding that Jones appealed. However, the trial court did not make a factual determination concerning Jones's work-search attempts, if she made any at all. The possibility therefore exists that she did not meet the Code's strict work-search requirements, and that as a result she is not entitled to SIBs for the fourteenth quarter as a matter of law. For the court to approve a settlement that awards Jones "partial" SIBs in this context is a far cry from the approval of only those settlements that adhere to all appropriate provisions of the Code.

### When there is no dispute over whether the worker satisfied the eligibility requirements during a particular quarter, a court can still approve settlements of SIBs claims.

It is important to note that parties can still settle *certain* disputes over SIBs awards. Where there is no disagreement that a worker has or has not satisfied the strict eligibility requirements, a court can approve settlements of those claims. It need not conduct a full-blown trial. Indeed in this case, the trial court—validly—did just that with respect to the claims for the twelfth and fifteenth quarters. When parties do disagree, however, on whether the worker complied with the eligibility

---

[10] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Philip G. Gove ed., 1961).

[11] *Id.*

requirements, a court cannot approve of a settlement that declares the worker "partially" eligible for SIBs during a given quarter.

**The Labor Code and Division regulations provide a detailed formula for the calculation of SIBs, and this formula is one of the "appropriate provisions of law" to which all SIBs settlements must adhere.**

The Texas Labor Code provides a tight framework for court approval of workers' compensation settlements. A comp claim may not be settled "contrary to the provisions of the appeals panel decision issued on the claim or issue unless a party to the proceeding has filed for judicial review."[12] Further, the court may not approve a settlement except on a finding that "the settlement adheres to all appropriate provisions of the law."[13] A settlement that "on its face" does not comply with all appropriate statutory provisions "is void."[14] The statute provides for injured workers to receive SIBs, and emphasizes—in the very first provision of Subchapter H—that such an award, "whether [granted] by the commissioner or a court, shall be made in accordance with this subchapter."[15]

The Labor Code makes clear that only court-approved workers' compensation settlements are allowed, and in turn, that court approval is contingent upon the settlement's compliance with the rest of the Workers' Compensation Act.[16]

---

[12] TEX. LAB. CODE § 410.256(a).

[13] *Id*. § 410.256(b)(2).

[14] *Id.* § 410.256(g) ("Settlement of a claim or issue must be in compliance with all appropriate provisions of law . . . . A settlement which on its face does not comply with this section is void.").

[15] *Id.* § 408.141.

[16] *See generally id.* ch. 408.

The Code contains a precise formula for calculating the amounts of SIBs to which an injured worker is entitled: "[T]he amount . . . for a week is equal to 80 percent of the amount computed by subtracting the weekly wage the employee earned during the reporting period . . . from 80 percent of the employee's average weekly wage . . . ."[17]

The Division's applicable regulation, promulgated pursuant to the Labor Code,[18] also specifies in great detail how a SIBs award should be calculated:

> Subject to any approved reduction for the effects of contribution, the monthly supplemental income benefit payment is calculated quarterly as follows:
> (1) multiply the injured employee's average weekly wage by 80% (.80);
> (2) add the injured employee's wages for all 13 weeks of the qualifying period;
> (3) divide the total wages by 13;
> (4) subtract this figure from the result of paragraph (1) of this subsection;
> (5) multiply the difference by 80% (.80);
> (6) if the resulting amount is greater than the maximum rate under the Act, Labor Code, § 408.061, use the maximum rate; and,
> (7) multiply the result by 4.34821.[19]

We construe the Workers' Compensation Act, like other statutes, by considering the plain meaning of the text, given the statute as a whole.[20] A SIBs award must be "equal" to the sum that the formula yields.[21] Given that the Court has never considered the question of whether parties in

---

[17] *Id.* § 408.144(b).

[18] *Id.* § 408.1415.

[19] 28 TEX. ADMIN. CODE § 130.102(g).

[20] *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452, 454 (Tex. 2012) (noting that "legislative intent emanates from the Act as a whole, and not from one isolated portion").

[21] TEX. LAB. CODE § 408.144(b).

a workers' comp dispute can settle for an amount that deviates from the formulaic output, we turn to the language of the Code.

The verb "to adhere" means "to bind oneself to observance."[22] It connotes an attachment strong enough to have been "glued" into place.[23] Thus, if courts can only approve settlements that adhere to all appropriate provisions of the law, such approval is contingent upon a *very* thorough consistency with the rest of the Code's "appropriate provisions."[24]

The adjective "appropriate" denotes that which is "specially suitable" with respect to the word or phrase it modifies.[25] Consequently, provisions of the law that are appropriate to SIBs are those parts of the Labor Code which are especially suitable to these benefits. The statutory requirement that settlements "adhere[] to all appropriate provisions of the law,"[26] then, means that settlements must stick closely to the Code provisions that are particularly pertinent to SIBs awards.

The Legislature's detailed and precise formula that governs the calculation of the amount of SIBs to which injured workers are entitled is a particularly "appropriate" provision of law. Further, a court can only approve a SIBs award made in accordance with Subchapter H of the Code—the very subchapter that contains the formula. Therefore, we hold that a court can only

---

[22] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Philip G. Gove ed., 1961).

[23] *Id.*

[24] TEX. LAB. CODE § 410.256(b).

[25] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Philip G. Gove ed., 1961).

[26] TEX. LAB. CODE § 410.256(b).

approve settlements that are strictly consistent with—indeed, settlements which "adhere[] to"—the formula for calculating SIBs awards.[27]

The plain language of the Code lays out a prescription for calculating the amount of SIBs that injured workers are entitled to receive, and courts may only approve settlements that adhere to the formula. Courts cannot approve a settlement for a dollar value that is not "equal to" the output of the formula as applied to facts particular to the injured employee, such as his average weekly wage.[28] Yet that is exactly what the trial court did here.

**The Legislature extensively reformed the workers' compensation framework in order to discourage opportunistic suits seeking small-money judgments—suits prone to generating settlement awards regardless of their underlying merits.**

We acknowledge that civil litigants are generally free to settle whenever, and on whatever terms, they wish. Parties naturally weigh potential costs and benefits alongside the relative probabilities of litigation success. But while Texas public policy generally favors the settlement of legal disputes,[29] the workers' comp scheme imposes special rules.

As noted above, while the Workers' Compensation Act provides for the possibility of settlement, it also includes the cautionary language—not usually found where other causes of action are concerned—that bars court approval of settlements that do not adhere to all appropriate provisions of law.[30] Moreover, the Legislature went as far as to specify a formula replete with

---

[27] *Id.*

[28] *Id.* § 408.061.

[29] *See Forest Oil Co. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008); *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995); TEX. CIV. PRAC. & REM. CODE § 154.002.

[30] TEX. LAB. CODE § 410.256(b).

9

precise percentages and invocations of mathematical operations such as subtractions of exact numerical amounts.[31] The Division, in promulgating regulations pursuant to the Labor Code's grant of rulemaking authority, has adopted a similarly precise computation governing SIBs awards.[32] From these provisions it is clear that a carefully prescriptive body of law demarcates the contours within which trial courts may render judgments that award SIBs, regardless of whether the court enters such judgments after trial or through approval of a pretrial settlement.

Indeed, as we have previously—and repeatedly—emphasized, the chief problem with the old workers' comp framework was that the unfettered ability to seek *de novo* judicial review spurred parties to treat the administrative forum as a mere "way station" to the courthouse.[33] The current Act includes provisions that are geared to "reduce the number and cost" of trial courts doing a double-take on agency determinations.[34] As we noted in *Garcia* twenty-plus years ago, attorney involvement in Texas workers' compensation claims was more than six times higher than in seventeen other states.[35]

We hold that settlement of workers' compensation disputes is tightly restricted to only those settlements that strictly comply with the meticulous governing Code provisions at hand. SIBs awards are typically relatively small compared with the costs of going to trial, and as a result are particularly vulnerable to the sort of nuisance suits that the Legislature sought to curb. If an injured

---

[31] *Id.* § 408.144.

[32] 28 TEX. ADMIN. CODE § 130.102.

[33] *See, e.g.*, *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 440 (Tex. 2012).

[34] *Id.*

[35] *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 513 (Tex. 1995).

worker is not eligible for SIBs, but is aware that the employer's insurer would rather pay some fraction of the formula's output instead of going to trial to prove the suit non-meritorious, there is a perverse incentive to appeal *any* of the Division's decisions not to award SIBs. It is this sort of opportunism that the Code is designed to curtail.

The Code's requirement that settlements comply with "all appropriate provisions of law" extends beyond those statutory requirements relating specifically to settlements.[36] Holding otherwise would render sections 410.256(b)(2) and (g) of little substance, since the Code already imposes specific requirements on settlements which have the force of law. The Code requires more, however, if we are to read it as a whole and give meaning to all its provisions.

Again, our ruling will not do away with all settlements. For example, the claimant and carrier could, under our decision, agree that the claimant was eligible for SIBs in one period but not another, and settle the case accordingly. We see no reason the trial court could not accept the parties' uncontested representations regarding the eligibility requirements or an applicable exception to meeting those requirements. In this case, the parties agreed that Jones was not entitled to SIBs for the twelfth quarter, and was entitled to SIBs for the fifteenth quarter. The Division does not complain of a settlement where the parties agree to full SIBs under statutory formulae for one period but no recovery for another period, nor do we. Further, our decision would not require the trial court independently to make eligibility findings where neither side is willing to proffer evidence on and otherwise litigate the issue. We do not suggest such an unworkable result, nor does any reasonable construction of the Code. Prohibiting a partial settlement for amounts

---

[36] *E.g.*, TEX. LAB. CODE §§ 408.005, 410.029, 410.258.

inconsistent *on their face* with statutory requirements[37] does not imply that the trial court must conduct an imaginary trial without the benefit of active participation of the parties in an adversarial proceeding.

Finally, we do not agree with Jones that settlement of all issues relating to a claim for SIBs in a particular quarter is not a settlement at all, but only an "agreement" under the Code. If all issues relating to that claim are resolved, the resolution is by definition a "settlement" "of all the issues" relating to that "workers' compensation claim."[38] Here, Jones filed three separate appeals to the district court of her three claims for SIBs in the twelfth, fourteenth, and fifteenth quarters, and those claims were consolidated at the request of the parties.

\*       \*       \*

Texas workers' compensation law embodies countless policy choices. Regardless of general public policy promoting settlement, it is evident that in the area of workers' compensation, and SIBs awards in particular, the Labor Code limits judicial review of agency award determinations. The Legislature's careful workers' comp scheme is phrased in mandatory, not permissive, language.

A SIBs settlement cannot recast a mandatory formula to have a discretionary application. Neither can a court—explicitly commanded to approve only those settlements that comply with all appropriate provisions of law—condone a settlement for a "partial" SIBs award without considering whether or not the worker has satisfied the threshold work-search requirements.

---

[37] *See id.* § 410.256(g) ("A settlement which on its face does not comply with this section is void.").

[38] *Id.* § 401.011(40).

12

Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** June 24, 2016