

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE CASAUBON FIRM and MARIA F. LOPEZ, | § | No. 08-20-00034-CV |
| | § | |
| Appellants, | | Appeal from the |
| | § | |
| v. | | 200th Judicial District Court |
| | § | |
| TEXAS MUTUAL INSURANCE COMPANY, | | of Travis County, Texas |
| | § | |
| | | (TC#D-1-GN-16-001766) |
| Appellee. | § | |

## **O P I N I O N**

This appeal involves two separate worker's compensation claims that were consolidated to resolve a potentially common issue: what constitutes a "dispute" for the purposes of triggering an employee's right to seek attorney's fees. In one of the claims, the worker's compensation carrier was presented with a claim for third and fourth quarter Supplemental Income Benefits (SIBs) that it neither agreed to pay, nor outright denied. Instead, it informed the worker that the applications for benefits were deficient and the carrier would not act on them. We conclude that the carrier's actions and inactions were sufficient to trigger a "dispute" as contemplated by the Texas Workers' Compensation Act (the Act), thus ultimately making the carrier liable for attorney's fees necessary to resolve the matter. In the other claim which involves a different worker, the carrier initiated

SIBs, but declined to stipulate to liability at a benefits review conference. For this second claim, we agree with the trial court below that any claim for attorney's fees is not ripe for decision because no claim for fees has yet been passed on by the administrative agency. As an adjunct to these questions, we also resolve a challenge to venue and whether a necessary party is missing, along with a claim for court costs.

For the reasons stated, we affirm in part and reverse in part the judgment below.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

This case involves two separate petitions for judicial review filed by Appellant Texas Mutual Insurance Company (Texas Mutual) following administrative proceedings brought under the Texas Workers' Compensation Act. The two petitions were consolidated in the trial court due to potentially overlapping issues regarding the circumstances under which the Texas Department of Insurance, Workers' Compensation Division (DWC) could issue an award of attorney's fees to be paid directly by an insurance carrier to claimants who had successfully sought SIBs.[2]

### A. Administrative Proceedings in Gerson Rubi's Case

Gerson Rubi was injured on the job in Dallas County in March of 2012, resulting in an impairment rating of 15 percent or greater. His employer carried worker's compensation insurance issued by Texas Mutual which initially accepted Rubi's resulting workers' compensation claim and paid income benefits to replace his lost wages. In addition, the DWC initially determined that Rubi

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that Court to the extent required by TEX.R.APP.P. 41.3.

[2] Under the Act, a worker may be entitled to four classes of benefits: Temporary Income Benefits are paid up until the time the worker reaches "maximum medical improvement"; next, Impairment Income Benefits are calculated based on the worker's percentage of permanent impairment; then, Supplemental Income Benefits are available if the worker's impairment rating is 15 percent or higher, and other conditions are met; and finally, Lifetime Income Benefits are paid for the most catastrophic injuries. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 521-523 (Tex. 1995).

2

was entitled to SIBs for the first quarter after his injury.[3]   Relevant to this appeal, on June 11, 2015, Rubi filed an application seeking SIBs for the third quarter following his injury, but Texas Mutual informed Rubi on August 6, 2015, that it would not process the application as it was incomplete. Shortly thereafter, on September 10, 2015, Rubi filed an application for fourth quarter SIBs, but Texas Mutual again notified Rubi on September 16, 2015, that it would not process the application as it was also incomplete.   In both instances, Rubi had failed to provide documentation regarding his efforts to obtain work during the qualifying period.[4]

On October 1, 2015, rather than resubmit completed applications to Texas Mutual, Rubi's attorney initiated dispute proceedings under Chapter 410 of the Texas Labor Code, by filing a DWC-45 Request for Benefit Review Conference with the Commission's Dallas Field Office.[5]

---

[3] Under the Act and Commission Rules, the DWC must make the initial determination for SIBs eligibility. Under the Act, the DWC is tasked with developing rules defining eligibility for SIBs, consistent with the statutory predicates. TEX.LAB.CODE ANN. § 408.1415(a).   Under those rules, an injured employee must meet the statutory eligibility requirements and "complete[] and file[] an Application for Supplemental Income Benefits in accordance with this subchapter[.]"   28 TEX.ADMIN.CODE § 130.102(b) (Texas Dep't of Insurance, Supplemental Income Benefits). Under section 130.103, the "the Division will make the determination of entitlement or non-entitlement for the first quarter of supplemental income benefits."   *Id*. § 130.103.   For subsequent quarters ". . . the insurance carrier shall make determinations for subsequent quarters" and must do so "within 10 days after receipt of the Application for Supplemental Income Benefits for a subsequent quarter."   *Id*. § 130.104(a); *see also Id*. § 130.107(a) ("After the Division's initial determination of entitlement, the insurance carrier shall pay supplemental income benefits . . ."); *Id*. § 130.101(5) (defining the "Reviewing authority" for an Application for Supplemental Income Benefits as the "Division staff for the first quarter determination and the insurance adjuster for subsequent quarter determinations.").

[4] A worker is entitled to receive SIBs if: (1) the worker has an impairment rating of 15 percent or higher; (2) the worker has not returned to work or has returned to work earning less than 80 percent of the employee's average weekly wage as a direct result of the employee's impairment; (3) the worker has not elected to commute a portion of the impairment income benefit under section 408.128; and (4) the worker has attempted in good faith to obtain employment.   *Dallas Nat'l Ins. Co. v. Morales*, 394 S.W.3d 826, 834 (Tex.App.--El Paso 2012, no pet.), *citing* TEX.LAB.CODE ANN. § 408.142.   There is no dispute in the present case that Rubi had an impairment rating higher than 15 percent, that he had not returned to work, and that he had not elected to commute a portion of his impairment income.

[5] The Act establishes a four-tiered framework for resolving disputed worker's compensation claims.   *See Texas Workers' Comp. Ins. Fund v. Texas Workers' Comp. Comm'n*, 124 S.W.3d 813, 815-16 (Tex.App.--Austin 2003, pet. denied).   The process begins with a benefit review conference, which is a non-adversarial, informal dispute resolution proceeding conducted by a benefit review officer, designed to explain, discuss, and mediate disputed workers' compensation claims.   *GuideOne Ins. Co. v. Cupps*, 207 S.W.3d 900, 905 (Tex.App.--Fort Worth 2006, pet. denied); TEX.LAB.CODE ANN. § 410.021; 410.022(a), (b).   A conference may be requested by a claimant, an insurance carrier, or an employer who has contested compensability.   TEX.LAB.CODE ANN. § 408.147 (a), (b); *see also Texas Dep't of Ins. v. Jones*, 498 S.W.3d 610, 618 (Tex. 2016).   If the parties reach a resolution at the conference, they sign a Dispute Resolution Agreement, which upon approval by the DWC, is binding on the parties.   TEX.LAB.CODE ANN.

Rubi raised two "disputes" at the conference. First, Rubi characterized Texas Mutual's actions as constituting a decision on its part that Rubi was not entitled to third and fourth quarter SIBs; and second, Rubi argued that Texas Mutual had waived its right to contest Rubi's entitlement to SIBs, by failing to file its own DWC-45 request for a benefit review conference within the ten-day deadline imposed on insurance carriers for filing such a request. Thereafter, a DWC benefit review officer held a benefit review conference to informally mediate the matter, but the parties were unable to reach a written agreement or settlement.

Thereafter, a DWC hearing officer held a contested case hearing to resolve what he referred to as the "disputed" issues in the matter, including whether Rubi was entitled to third and fourth quarter SIBs and whether Texas Mutual had waived its right to contest his entitlement to either quarter due to its failure to request its own benefit review conference in a timely manner. In a resulting Decision and Order, the hearing officer concluded that Texas Mutual had waived its right to contest both quarters, and owed Rubi SIBs for those quarters. The hearing officer added, however, that if Texas Mutual had timely contested Rubi's application, it would have found that Rubi was not entitled to the third or fourth quarter SIBS, as the record demonstrated that he was able to work in some capacity during those two quarters.

Texas Mutual appealed that decision to a DWC appeals panel, arguing that Rubi was not entitled to SIBs for either quarter and that the hearing officer erred in finding that it had waived its

---

§ 410.029(b). However, if no agreement is reached, and the parties do not agree to submit the case to arbitration, the DWC will then schedule a contested case hearing, to be conducted by a hearing officer. *Id*. § 410.151(a); *Id*. § 410.152(a). At the hearing, the parties may present evidence and the testimony of witnesses. *Id*. §§ 410.158-.163. The hearing officer is then required to issue a written decision that includes "(1) findings of fact and conclusions of law; (2) a determination of whether benefits are due; and (3) an award of benefits due." *Id*. § 410.168(a). The hearing officer's decision regarding entitlement to benefits is final in the absence of a timely appeal by a party. *Id.* § 410.169. Either party may seek review of the hearing officer's determination by challenging the decision before an administrative appeal panel. *Id*. § 410.202(a). And finally, if dissatisfied with the appeals panel's decision, a party may then file a petition for judicial review with the appropriate district court. *Id*. § 410.252(a), (b).

right to contest Rubi's entitlement to the two quarters. An appeals panel affirmed the hearing officer's decision, and Texas Mutual did not file a petition for judicial review challenging that decision.

Thereafter, Rubi's attorneys, the Casaubon firm (Casaubon) sought an award of attorney's fees to be paid by Texas Mutual pursuant to section 408.147(c) of the Act, which permits the DWC to order an insurance carrier to pay a claimant's attorney's fees when the insurance carrier has unsuccessfully disputed a commission determination that a claimant is entitled to SIBs. A DWC hearing officer granted the request, issuing two separate "division orders," awarding attorney's fees to Casaubon to be paid by Texas Mutual. Collectively under the two orders, the DWC determined that Texas Mutual was responsible for paying a total of $8,525 in attorney's fees. In the order, the hearing officer rejected Texas Mutual's argument that it had not disputed Rubi's entitlement to eligibility, which is a predicate for an award of attorney's fees under the Act. The hearing officer expressly found that Texas Mutual's failure to approve Rubi's application for benefits in a timely manner amounted to a defacto dispute of Rubi's entitlement to a SIBs award.

Texas Mutual appealed both orders to a DWC appeals panel, again arguing that it did not dispute Rubi's entitlement to eligibility, and that Casaubon was therefore not entitled to an award of attorney's fees under section 408.147(c). The appeals panel affirmed both decisions, without issuing a supporting opinion.

## B. Administrative Proceedings in Maria Lopez's Case

Lopez was injured on the job in Corpus Christi, and her employer also carried worker's compensation insurance through Texas Mutual. Lopez applied for SIBs for the fourteenth quarter after her injury. Texas Mutual acknowledges that it received her application on December 17, 2015, but due to an "internal routing error," it did not issue a determination of entitlement or non-

5

entitlement to benefits, and did not request a benefit review conference, within the required 10 days. When it discovered the error, it paid the SIBs to Lopez by a check dated December 30, 2015, which Lopez received the first week in January of 2016. But also on December 30, 2015, Lopez's attorney requested a benefit review conference--apparently before her client received the check. The issues to be decided at that conference were similar to those raised at Rubi's conference: (1) Lopez's entitlement to SIBs; and (2) whether Texas Mutual had waived its right to dispute Lopez's entitlement to benefits by failing to timely request a benefits review conference. At the conference, Lopez's attorney asked Texas Mutual to sign a Benefit Dispute Agreement, stating that they had resolved their dispute. Texas Mutual, however, declined to sign the agreement, stating its position that there was no dispute to resolve, as it had already paid the benefits to Lopez and it was not contesting her entitlement to them.

The DWC then scheduled a contested case hearing at its Corpus Christi Field Office, and Texas Mutual responded by filing a motion to dismiss the hearing on the ground that the issue of Lopez's entitlement to benefits was moot. The hearing officer, however, denied the motion, and at the hearing Texas Mutual stipulated that Lopez was entitled to the requested SIB's. The hearing officer thereafter issued a Decision and Order, finding that Lopez was entitled to the SIB's she requested, and that Texas Mutual had already paid the requested benefits to her. The hearing officer further found that Texas Mutual had waived its right to dispute Lopez's entitlement to benefits, and ruled that because Texas Mutual had failed to sign the proposed Benefit Dispute Agreement, it became "necessary" for Lopez "to bring the dispute through the dispute resolution process for resolution at a benefit contested case hearing and resulting Decision and Order."

Out of concern that Lopez would use the language in the order to argue that Texas Mutual should pay her attorney's fees, Texas Mutual filed an appeal challenging the portion of the order

6

regarding the necessity of bringing dispute resolution proceedings. The appeal panel, however, affirmed the hearing officer's Order and Decision, without issuing a supporting opinion.

### C. The Trial Court Proceedings

Texas Mutual then filed a Petition for Judicial Review in a Travis County district court, challenging the two DWC orders directing it to pay Casaubon's attorney's fees in the Rubi case. In addition, Texas Mutual filed a separate petition for judicial review in the Lopez case, challenging the findings in the hearing officer's Decision and Order in which she found that a dispute existed between the parties, and denying its motion to dismiss. In response, Lopez filed a counterclaim, seeking a judgment that she was entitled to an award of attorney's fees under sections 408.147(c) and 408.221(c) of the Act.

Texas Mutual thereafter filed a motion to consolidate the two petitions which was granted by the trial court. Casaubon also filed a motion to transfer venue in the Rubi case, arguing that venue was mandatory in Dallas County under the Act, because Rubi resided there at the time of his injury. Lopez filed a similar motion to transfer venue to Nueces County, where she resided at the time of her injury. The trial court, however, denied both motions.

The parties thereafter filed briefs in support of their respective positions. In short, Texas Mutual argued that the Act only permits the DWC to order an insurance carrier to pay a claimant's attorney's fees when the carrier has disputed a DWC's determination of benefits, which it had not done in either case. In response, Casaubon argued that Texas Mutual's failure to approve Rubi's SIBs applications or to pay his 3rd and 4th quarter benefits gave rise to a "dispute" within the meaning of the Act, which, in turn, forced Rubi to initiate the dispute resolution process in order to obtain his benefits. Lopez, on the other hand, argued that Texas Mutual was seeking an improper

7

"advisory opinion" on the question of whether the DWC could issue an award of attorney's fees in her case, as no attorney's fees had yet been requested or awarded.

The trial court agreed with Texas Mutual that the DWC had abused its discretion in awarding attorney's fees in Rubi's case, and reversed both the DWC orders awarding such fees. However, the trial court agreed with Lopez that her case was not ripe for review, and that Texas Mutual was seeking an "advisory opinion" on the question of whether she was entitled to an award of attorney's fees. The trial court further ordered both parties to bear their own costs.

Casaubon and Lopez filed a joint motion for new trial. Casaubon argued that the trial court erred in reversing the division orders awarding attorney's fees in Rubi's case. Lopez also argued that she was the "prevailing party" in the litigation given the trial court's finding that Texas Mutual's petition for judicial review in her case was not ripe for review, and that she was therefore entitled to an award of costs and attorney's fees under sections 408.147(c) and 498.221 of the Act. Lopez further argued that she was entitled to "declaratory relief" to prevent Texas Mutual from engaging in similar conduct in the future.

After both motions for new trial were denied by operation of law, Casaubon and Lopez both appealed from the trial court's order, but Texas Mutual did not.

## II. ISSUES PRESENTED

Casaubon raises several issues challenging the trial court's order in Rubi's case, contending that: (1) Texas Mutual did in fact "dispute" Rubi's entitlement to SIB's and therefore could be ordered to pay attorney's fees; (2) Texas Mutual waived its right to petition for judicial review to challenge the DWC's attorney fee award, by failing to appeal from the DWC's earlier order in which it found that Texas Mutual had disputed Rubi's entitlement to benefits; (3) venue was not

8

proper in Travis County; and (4) Texas Mutual was required to name the DWC as a party in its petition for judicial review.

On appeal, Lopez does not challenge the trial court's dismissal of the underlying suit based on ripeness (as she had in fact raised that argument). Instead, she seeks a "declaration" that she is entitled to an award of attorney's fees, to "prevent this from happening to her again." Alternatively, she contends that at the least she was entitled to an award of her costs for litigating the matter in the trial court pursuant to Rule 131 of the Texas Rules of Civil Procedure, asserting that she was the successful party in the litigation. She therefore requests that we remand her case to the trial court to make such an award.

## III. STANDARD OF REVIEW AND CONTROLLING LAW

"Texas has long adhered to the American Rule with respect to awards of attorney's fees, which prohibits the recovery of attorney's fees from an opposing party in legal proceedings unless authorized by statute or contract." *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013); *see also Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996). When the attorney's fee claim is statutorily based, the statute must expressly provide for the award of such fees. *Mayfield*, 923 S.W.2d at 593; *see also Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. l999) (a statutory award of attorney's fees "may not be supplied by implication but must be provided for by the express terms of the statute in question."), *quoting First City Bank-Farmers Branch v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984).

"The availability of attorney's fees under a particular statute is a question of law for the court." *Holland*, 1 S.W.3d at 94. We therefore review the issue de novo. *State Office of Risk Mgmt. v. Olivas*, 509 S.W.3d 499, 503 (Tex.App.--El Paso 2016, no pet.) (construing a statute, such as the Labor Code provisions relevant to the trial court's award of attorney's fees, presents issues

9

of law that are reviewed de novo).   When interpreting a statute, "our objective is to determine and give effect to the Legislature's intent."   *Nat'l Liab. and Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000).   In doing so, we look first and foremost to the language used in the statutory text, *Olivas*, 509 S.W.3d at 503, and generally interpret the statute according to its plain meaning.   *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012) (in interpreting the legislature's intent, a court must draw from the "plain meaning of the words chosen by the Legislature when it is possible to do so.").

## IV.  PROCEDURAL ISSUES IN RUBI'S CASE

We first address Casaubon's two procedural arguments, which are raised in Issue Three, regarding venue and the necessity of naming the DWC as a party in the litigation.   We reject both of these arguments.

### A.  Venue in the Casaubon Case was Proper in Travis County

In Issue Three, Casaubon argues that the trial court erred in denying its motion to transfer venue, contending that Dallas County was the proper venue because that is where Rubi was injured and resides.   In particular, Casaubon relies on section 410.252(b)(1) of the Texas Labor Code, which provides that a party seeking judicial review of an administrative decision must file the petition "with the appropriate court in . . . the county where the employee resided at the time of the injury or death . . . ."   TEX.LAB.CODE ANN. § 410.252(b)(1).   Section 410.252 further provides that a court must transfer the petition to the proper court if it determines that it was "filed in a county other than the county described by Subsection (b)."   *Id*. § 410.252(c).

These provisions, however, only apply in cases in which a party has petitioned for "[j]udicial review of a final decision of the appeals panel regarding compensability or eligibility for or the amount of income or death benefits[.]"   *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516-17

(Tex. 2007), *quoting* TEX.LAB.CODE ANN § 410.301(a). As the Texas Supreme Court has recognized, the Act divides judicial review of workers' compensation appeals by "drawing a distinction between issues that concern compensability [or eligibility] and those that do not." *Morales*, 241 S.W.3d at 516-17, *citing* § 410.301(a), 410.255(a). In the former situation, venue is mandatory in the claimant's place of residence at the time of injury, but in appeals in which eligibility and compensability are not at issue, the petition "must be filed in Travis County." *Morales*, 241 S.W.3d at 516-17, *citing* TEX.LAB.CODE ANN. § 410.255(a); TEX.GOV'T CODE ANN. § 2001.176(b)(1) (unless otherwise provided by statute, a petition for judicial review in a contested case must be filed in a Travis County district court.). Accordingly, the appropriate judicial review mechanism depends upon the nature of the issue in dispute. *Morales*, 241 S.W.3d at 516-17.

The sole issue in Texas Mutual's petition for judicial review centers on the propriety of the attorney's fee award under section 408.147(c) and does not involve any issues of eligibility or compensability. The Act expressly provides that when a party seeks judicial review of an issue other than eligibility or compensability, the proceedings are governed by Chapter 2001 of the Government Code, (the Administrative Procedure Act), which provides for mandatory venue in Travis County. TEX.LAB.CODE ANN. § 410.255(a); TEX.GOV'T CODE ANN. § 2001.176(b). And it is well-established that issues pertaining to attorney fee awards are considered "collateral" issues, which do not involve eligibility or compensability. *Morales*, 241 S.W.3d at 519; *see also In re Hartford Underwriters*, 168 S.W.3d at 296 (an appeal panel's decision dealing only with attorney's fees "is not a decision regarding compensability or eligibility[.]"); *Texas Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co.*, 208 S.W.3d 523, 534-35 (Tex.App.--Austin 2006, pet. denied) (recognizing that "collateral issues" that do not center on eligibility or compensability include disputes over attorney's fees); *Croysdill v. Old Republic Ins. Co.*, 490 S.W.3d 287, 293 (Tex.App.--El Paso 2016,

11

no pet.) (recognizing that disputes over attorney's fees involve "collateral issues" that do not concern or implicate compensability or eligibility for benefits). Accordingly, we agree with our sister court in Eastland that mandatory venue for a petition for judicial review that challenges only the issue of attorney's fees is in Travis County. *In re Hartford Underwriters Ins. Co.*, 168 S.W.3d 293, 294-96 (Tex.App--Eastland 2005, no pet.).

Casaubon, however, argues that its appeal involves more than just an attorney fee dispute, and that it instead involves important issues pertaining to the construction of the Act's dispute resolution proceedings, and what steps an insurance carrier must take to avoid a dispute when presented with a SIBs application. Although our opinion might implicate those concerns, the actual issue before us relates to attorney's fees, and not benefit eligibility or compensability. Accordingly, we conclude that venue was proper in Travis County.

## B. No Requirement to Name DWC as a Party

Casaubon also argues in its Issue Three that Texas Mutual was required to name the DWC or a DWC official a "necessary" party in its petition for judicial review because the petition asks the courts to review the DWC's interpretation of the attorney's fee statute. Casaubon argues that it would be therefore improper for this Court to declare that the DWC's interpretation of one of its governing statutes was incorrect without the DWC being named a party in the case. We disagree, as the Act clearly allows for judicial review of DWC decisions to determine whether an error has occurred, without the need to name the DWC as a party. When a party challenges a collateral issue, such as an attorney fee award, the proceedings are governed by Chapter 2001 of the Government Code. In turn, section 2001.176 of that code requires the moving party to serve a copy of its petition for judicial review on the state agency involved in the proceedings. TEX.GOV'T CODE ANN. § 2001.176(b)(1); TEX.LAB.CODE ANN. § 410.255(a). Contrary to Casaubon's

12

argument, however, neither the Labor Code nor the Administrative Procedures Act require the state agency to be named as a party, nor do any of the relevant statutes contemplate such. Instead, the process set up by the legislature is clearly designed to simply give the DWC the opportunity to intervene but does not require them to do so. TEX.LAB.CODE ANN. § 410.254 ("On timely motion initiated by the commissioner, the division shall be permitted to intervene in any judicial proceeding under this subchapter or Subchapter G."). In the present case, Texas Mutual served the petition on the DWC, but it made the choice not to intervene in the proceedings.

In addition, the cases that Casaubon primarily relies on arise from Uniform Declaratory Judgment Act claims filed against state agencies. And Casaubon appears to be arguing that Texas Mutual *could have* filed a declaratory judgment action against the DWC seeking a declaration of its rights under the Labor Code. However, Texas Mutual did not file such an action, and instead filed its petition for judicial review through the dispute adjudication process created by the legislature, which as set forth above, has no requirement that the DWC be named as a party.

Casaubon's Issue Three is overruled.

## V. ATTORNEY'S FEES IN RUBI'S CASE

In Issue One, Casaubon argues that the trial court erred by reversing the DWC's attorney fee award, claiming that the award was proper under section 408.147(c) of the Act. In particular, Casaubon argues that Texas Mutual "disputed" Rubi's entitlement to SIBs by failing to approve his incomplete application for SIBs in a timely manner, and that this was sufficient to permit the DWC to award him attorney's fees under section 408.147(c) of the Act. We agree with Casaubon that Rubi was entitled to an award of fees under 408.147(c), but for different reasons than Casaubon suggests.

13

## A. Attorney Fee Awards When Carrier Contests SIBs Entitlement

In general, an award of attorney's fees in a worker's compensation case is payable out of the claimant's recovery. *See Cigna Ins. Co. of Texas v. Middleton*, 63 S.W.3d 901, 903 (Tex.App.--Eastland 2001, pet. denied); *Balboa v. T.I.G. Premier Ins. Co.*, No. 08-00-00215-CV, 2001 WL 429102, at *1-2 (Tex.App.--El Paso Apr. 27, 2001, no pet.), *citing* TEX.LAB.CODE ANN. § 408.221(b) (attorney's fee "shall be paid from the claimant's recovery."). However, there are exceptions to this rule, including section 408.147(c) that provides:

> If an insurance carrier disputes the commissioner's determination that an employee is entitled to supplemental income benefits or the amount of supplemental income benefits due and the employee prevails on any disputed issue, the insurance carrier is liable for reasonable and necessary attorney's fees incurred by the employee as a result of the insurance carrier's dispute and for supplemental income benefits accrued but not paid and interest on that amount . . .

TEX.LAB.CODE ANN. § 408.147(c). This section expressly provides that attorney's fees awarded thereunder "are not subject to Sections 408.221(b), (f), and (i)," or in other words, they are not paid from the claimant's recovery, but instead are paid directly by the insurance carrier. *See* TEX.LAB.CODE ANN. § 408.147(c); *see also Texas Mut. Ins. Co. v. Baker*, 292 S.W.3d 798, 803 (Tex.App.--Fort Worth 2009, no pet.) (recognizing that the "plain language of the statute authorizes an award of attorney's fees to an employee who prevails on any disputed issue in cases in which the Commission initially awards SIBs and the insurance carrier later disputes that award"); *Home Ins. Co. v. Garcia*, 74 S.W.3d 52, 59-60 (Tex.App.--El Paso 2002, no pet.) (holding that section 408.147(c) is "clear and unambiguous that attorney's fees are recoverable when the insurance carrier disputes a commission finding," but not when the employee does so). The Administrative Code parallels this statute, providing that: "An attorney for an employee who prevails when a carrier contests a commission determination of eligibility for supplemental income benefits shall be eligible to receive a reasonable and necessary attorney's fee, including expenses [which] is

14

payable by the carrier, not out of the employee's benefits[.]" 28 TEX.ADMIN.CODE § 152.1(f) (Tex. Dep't of Ins., Attorney's Fees).

But what does it mean to dispute a "commission determination"? As this Court previously recognized, the DWC makes the initial determination of whether a claimant is entitled to SIBs for the first quarter after an injury as required by the Administrative Code, while the insurance carrier is responsible for determinations of entitlement for subsequent quarters. *See Dallas Nat'l Ins. Co. v. Morales*, 394 S.W.3d 826, 835 (Tex.App.--El Paso 2012, no pet.), *citing* 28 TEX.ADMIN.CODE § 130.103(a) (Tex. Dep't of Ins., Supp. Income Benefits) ("For each injured employee with an impairment rating of 15 percent or greater, and who has not commuted any impairment income benefits, the Division will make the determination of entitlement or non-entitlement for the first quarter of supplemental income benefits."); 28 TEX.ADMIN.CODE §130.104(a) (Tex. Dep't of Ins., Supp. Income Benefits) ("After the Division has made a determination of entitlement or non-entitlement for supplemental income benefits for the first quarter, the insurance carrier shall make determinations for subsequent quarters . . ."). In determining whether an insurance carrier has disputed a "commission determination" of SIBs eligibility for purposes of awarding attorney's fees under section 408.147(c), both the DWC and various courts have concluded that the phrase "commission determination" in section 408.147(c) refers to the Commission's initial determination of SIBs eligibility. The Commission's appeals panel has written:

> [T]he phrase "commission determination" is synonymous with the phrase "initial determination." Thus, pursuant to Section 408.147(c), when the Commission has made an initial determination that the claimant is entitled to SIBS and the carrier later disputes a claimant's entitlement to SIBS in subsequent quarters, the requirement that carrier is disputing a "commission determination" is satisfied. Thereafter, the carrier's liability for attorney's fees becomes dependent upon whether or not the claimant prevails on a disputed issue.

Texas Workers' Compensation Comm'n, Appeal No. 962504, 1997 WL 40349, at *1 (Jan. 27, 1997). This Court reached a similar conclusion interpreting the term, "commissioner's

determination," as used in section 408.147(c) to mean the "commission's initial determination of eligibility for SIBs with respect to the first compensable quarter." *Morales*, 394 S.W.3d at 835 *quoting Liberty Mut. Ins. Co. v. Montana*, 49 S.W.3d 599, 604 (Tex.App.--Fort Worth 2001, no pet.). In other words, the legislature intended to "provide for an award of attorney fees, not payable from the SIBS benefit, for each quarter where the carrier's assessment of nonentitlement is overturned by the Commission or the courts." *Montana*, 49 S.W.3d at 603, *quoting* Texas Workers' Compensation Comm'n, Appeal No. 962504, 1997 WL 40349, at *3 (Jan. 27, 1997) (internal quotation marks omitted). Accordingly, when the Commission initially determines that a claimant is entitled to SIBs and an insurance carrier unsuccessfully challenges a claimant's entitlement to SIBs for subsequent quarters, "the requirement that the carrier is disputing a 'commission determination' is satisfied." *Morales*, 394 S.W.3d at 836, *quoting Montana*, 49 S.W.3d at 602.

**B. Did Texas Mutual Dispute Rubi's Entitlement to 3rd and 4th Quarter SIBs?**

Here, we must presume that the DWC made an initial determination that Rubi was entitled to SIBs for the first quarter, thereby establishing a "commission determination" of eligibility. The next question is then whether Texas Mutual disputed Rubi's entitlement to third and fourth quarter benefits.

Casaubon contends that Texas Mutual initiated the dispute over Rubi's SIBs entitlement because it failed to issue a determination of entitlement or non-entitlement within the ten days set forth in the Administrative Code. Section 130.104 of the Administrative Code provides that after a Commission makes a determination of entitlement to first quarter SIBs, and a claimant thereafter files an application for subsequent quarters, the "insurance carrier shall issue a determination of entitlement or non-entitlement within 10 days after receipt of the Application . . ."

16

28 TEX.ADMIN.CODE § 130.104(a), (b). In making a subsequent quarter determination, the insurance carrier is required to issue "a notice of determination" to the injured employee containing specified information, and in particular, the Code provides that if the insurance carrier is denying the application, the "determination of non-entitlement shall contain sufficient claim specific information to enable the employee to understand the reason for the insurance carrier's determination." 28 TEX.ADMIN.CODE § 130.104(e). In addition, as set forth above, the Act provides that an insurance carrier only has ten days in which to file a request for a Benefit Review Conference to dispute a claimant's entitlement to benefits. TEX.LAB.CODE ANN. 408.147(b).

The parties agree that Texas Mutual did not issue a determination within the ten days set forth in the Code, nor did it request a Benefit Review Conference within the 10-day period set forth in the Act. Instead, Texas Mutual responded with an email to Rubi's counsel that the "application will not be processed as there are no attachments supporting entitlement." The application form contains a specific section, titled *Notice of Entitlement or Non-Entitlement,* that the carrier is to complete, and here Texas Mutual left the section blank.

Texas Mutual's failure to provide Rubi with a determination--or to initiate SIBs--in effect constituted a "refusal" to pay the benefits which triggered a dispute over his entitlement to the benefits. Of course, Rubi could have responded to Texas Mutual's letter informing him that his application was incomplete, by simply supplying the missing information. But there are time deadlines for filing applications for SIBs. 28 TEX.ADMIN.CODE §§ 130.104(c); 130.105(a) (Tex. Dep't of Ins., Supp. Income Benefits) (a claimant must file its application for subsequent quarter SIBs "no later than seven days before, and no earlier than 20 days before, the beginning of the quarter for which the injured employee is applying for supplemental income benefits."). The failure to comply with the deadlines can deprive a claimant of the right to benefits. *Id.* And here,

17

rather than risk missing a deadline, Rubi instead chose to stand on his application and pursued the Act's dispute adjudication process.

And while Texas Mutual's failure to request a benefit review conference within the ten-day period precluded it from *formally* disputing Rubi's entitlement to SIBs for the requested quarters, we agree with the hearing officer that Texas Mutual's failure to timely take any action on his applications was "tantamount" to disputing Rubi's entitlement to SIBs. Moreover, Texas Mutual does not explain what steps it believes Rubi could have taken once the ten-day period expired to force Texas Mutual to pay his benefits, other than to initiate the dispute resolution process. As the hearing officer noted, by the time the matter reached the contested case hearing stage, Texas Mutual had still not tendered payment to Rubi for either the third or fourth quarter SIBs, nor does the record reflect that Texas Mutual provided Rubi with any acknowledgment that he was entitled to SIBs during the dispute resolution proceedings. And after the hearing officer found that Rubi was entitled to SIBs for both quarters, Texas Mutual appealed the decision, and expressly argued in its briefing to the appeal panel that Rubi was "not entitled" to third and fourth quarter benefits, and that the hearing officer erred in finding that it had waived its right to contest Rubi's entitlement to the two quarters. Nonetheless, the appeal panel rejected Texas Mutual's arguments, affirming the hearing officer's decision, and Texas Mutual was therefore unsuccessful in the proceedings.

Accordingly, we conclude that Texas Mutual's actions--and inactions--constituted an unsuccessful dispute of a commission determination of Rubi's entitlement to SIBs. And it further caused a consequent delay in payment of Rubi's third and fourth quarter SIBs, which appears to be the evil that the legislature sought to address in authorizing awards of attorney's fees when an insurance carrier has unsuccessfully disputed a claimant's entitlement to benefits. *See generally Mid-Century Ins. Co. v. Texas Workers' Comp. Comm'n*, 187 S.W.3d 754, 758 (Tex.App.--Austin

18

2006, no pet.) (recognizing that the legislature's choice to allow for an award of attorney's fees when an insurance carrier has chosen to dispute a commission determination regarding SIBs entitlement clearly comports with the general goals of the Workers' Compensation Act to help reduce delays and costs associated with needless litigation), *citing Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 512-13, 515, 533 (Tex. 1995) (recognizing that the legislature sought to reduce delay and costs by placing greater reliance on administrative proceedings and stronger regulation of attorney's fee awards).

Accordingly, we conclude that the trial court erred in ruling that Casaubon was not entitled to an award of attorney's fees under section 408.147(c) of the Act.[6]

Casaubon's Issue One is sustained.

## VI. ATTORNEY'S FEES AND COSTS IN THE LOPEZ CASE

In Issue Two, Lopez contends that she was entitled to an award of attorney's fees or costs of litigation for three separate reasons. We examine each reason below.

### A. Attorney Fees Under Section 408.147(c)

Lopez first contends that she was entitled to an award of attorney's fees under section 408.147(c) of the Act, contending that she successfully prevailed in the parties' "dispute" regarding her entitlement to SIBs for the fourteenth quarter after her injury. As set forth above, however, the trial court found that the issue of Lopez's entitlement to benefits under section 408.147(c) was not ripe for review, as Lopez had not yet made a request for attorney's fees at the administrative level. And it was Lopez herself who raised the ripeness issue in the trial court, arguing that Texas Mutual was seeking an impermissible "advisory opinion" as she had *not yet sought attorney's fees at the*

---

[6] Because we resolve this issue in Casaubon's favor, we need not address its argument that Texas Mutual did not preserve error by failing to file a petition for judicial review challenging the appeals panel's decision affirming the hearing officer's initial determination of eligibility and compensability.

*administrative level*. As well, she appears to acknowledge on appeal that the DWC would have to make that determination "before this Court could even attempt to review [the parties'] fee dispute[]." Texas Mutual does not appeal from the trial court's ruling dismissing its petition for judicial review on ripeness grounds. Consequently, no party here challenges the trial court's determination that the attorney's fee question in Lopez is premature.

As the court's ruling on ripeness remains unchallenged, we decline to address the underlying merits of Lopez's argument that she was entitled to attorney's fees under section 408.147(c).

### B. Attorney's Fees Under Section 408.221

Lopez also contends that she is entitled to an award of fees under section 408.221 of the Act. Section 408.221 (c) provides for an award of attorney's fees to a claimant, payable from the insurance carrier, when the claimant prevails on an insurance carrier's petition for judicial review; however, it only authorizes such an award if the claimant prevails on the compensability or eligibility issues raised by the insurance carrier. In particular, it provides that:

> An insurance carrier that seeks judicial review under Subchapter G, Chapter 410, of a final decision of the appeals panel regarding *compensability or eligibility* for, or the amount of, income or death benefits is liable for reasonable and necessary attorney's fees . . . incurred by the claimant as a result of the insurance carrier's appeal if the claimant prevails on an issue on which judicial review is sought by the insurance carrier in accordance with the limitation of issues contained in Section 410.302.

TEX.LAB.CODE ANN. § 408.221(c) (emphasis supplied). We have two concerns about the applicability of this statute to Lopez's case.

First, the statute also expressly states that "[t]his subsection does not apply to attorney's fees for which an insurance carrier may be liable under Section 408.147." TEX.LAB.CODE ANN. § 408.221(c). As discussed above, section 408.147 applies in situations in which an insurance carrier has disputed a commission determination of entitlement to SIBs; and as Lopez's case only involves entitlement to SIBs, this would be the relevant statute under which attorney's fees would

20

be awarded. Accordingly, Lopez would not be entitled to an award of attorney's fees under section 408.221 for any dispute the parties may have had over her entitlement to SIBs. *See Cheatum v. Texas Workers' Comp. Comm'n*, No. 05-98-00846-CV, 2001 WL 100194, at *3 (Tex.App.--Dallas Feb. 7, 2001, no pet.) (recognizing that section 408.221 allows for the payment of attorney's fees for representing a claimant before the commission or court "for non-SIB issues," while 408.147(c) applies to SIBs cases).

In addition, even if we were to conclude that section 408.221 could apply to Lopez's case, it expressly provides for an award of fees when the insurance carrier has brought a petition for judicial review challenging eligibility and compensability. Texas Mutual's petition, however, did not challenge eligibility or compensability, and instead only challenged Lopez's entitlement to attorney's fees--albeit prematurely. In fact, the record reflects that Texas Mutual had already paid Lopez her requested SIBs for the fourteenth quarter before the petition was filed, which belies any delay caused by the filing of its petition. *See Dean Foods Co. v. Anderson*, 178 S.W.3d 449, 454-55 (Tex.App.--Amarillo 2005, pet. denied) (legislature adopted section 408.221(c) to ensure that if the insurance carrier appealed an award of benefits, thereby delaying the payment of benefits to an injured worker, "it ran the risk of having to pay the claimant's attorney's fees if its appeal was not well taken."). Accordingly, we find no basis for an award of attorney's fees under this provision.

## C. Court Costs as the Successful Party in the Trial Court

In her final argument, Lopez contends that the trial court should have awarded Lopez court costs as the prevailing party pursuant to Rule 131 of the Texas Rules of Civil Procedure. We disagree with this argument as well.

Rule 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R.CIV.P. 131. A "successful

21

party" is "one who obtains judgment of a competent court vindicating a civil right or claim." *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 189-90 (Tex.App.--Houston [1st Dist.] 2018, no pet.) *quoting Trevino v. City of Pearland*, 531 S.W.3d 290, 298 (Tex.App.--Houston [14th Dist.] 2017, no pet.). However, Rule 303 of the Rules of Civil Procedure also provides that when a counterclaim is pleaded, the party in whose favor final judgment is rendered shall also recover costs. TEX.R.CIV.P. 303. Accordingly, when the parties have filed both claims and counterclaims, and neither party is wholly successful on either, the trial court does not abuse its discretion in ordering each party to bear its own costs. *See Niemeyer v. Tana Oil and Gas Corp*, 39 S.W.3d 380, 389-90 (Tex.App.--Austin 2001, pet. denied) (trial court did not abuse its discretion by ordering each party to bear its own costs, where the defendant had filed a counterclaim, and neither party wholly prevailed on their various claims against each other); *see also Dandachli v. Active Motorwerks, Inc.*, No. 03-19-00494-CV, 2021 WL 3118437, at *4 (Tex.App.--Austin July 23, 2021, no pet.) (mem. op.) (trial court did not abuse its discretion in ordering the parties to bear their own costs, where neither party was wholly successful on their respective claims and counterclaims); *Henry v. Masson*, 453 S.W.3d 43, 50-51 (Tex.App.--Houston [1st Dist.] 2014, no pet.) (when a party alleges a counterclaim, if neither party is wholly successful on its claims, it is within the trial court's discretion to order each party to bear its own costs); *see generally Durant v. Anderson*, No. 02-14-00283-CV, 2020 WL 1295058, at *36 (Tex.App.--Fort Worth Mar. 19, 2020, pet. denied) (mem. op.) ("The plain language of Rule 131 does not expressly require an allocation of costs between unsuccessful parties).

Here, Texas Mutual alleged in its petition for judicial review that Lopez was not entitled to an award of attorney's fees under section 408.147(c), while Lopez alleged in her counterclaim that she was entitled to such an award. And, as explained above, both parties were unsuccessful on

their respective claims, as the trial court concluded that the issue of whether Lopez was entitled to an award of fees was not yet ripe for review. Accordingly, we conclude that neither party wholly prevailed on their claims, and that the trial court did not abuse its discretion in ordering the parties to bear their own costs.

Issue Two is overruled.

## VII. CONCLUSION

We reverse the trial court's judgment in Casaubon's case and reinstate the DWC's award of attorney's fees in both of its division orders. In addition, given our determination that the trial court erred in granting Texas Mutual's petition for judicial review, we grant Casaubon's request that we remand the case to the trial court to consider Casaubon's entitlement to an award of costs under Rule 131 as the successful party in the trial court litigation. However, we affirm the trial court's judgment in the Lopez case in all respects.

JEFF ALLEY, Justice

December 21, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

23